Alex R. Straus (SBN 321366)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN LLP**
280 S. Beverly Drive, PH Suite
Beverly Hills, CA 90212
(866) 252-0878 (phone)
(615) 921-6501 (fax)
astraus@milberg.com

*Attorneys for Plaintiffs and Putative Classes*
*Other Counsel on Signature Page*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA WATSON and ANGELA KEERS, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| CRUMBL LLC, CRUMBL IP, LLC, and CRUMBL FRANCHISING, LLC, | |
| Defendants. | |

Plaintiffs Lisa Watson and Angela Keers (collectively, "Plaintiffs") bring this Class Action Complaint against Defendants Crumbl LLC, Crumbl IP, LLC, and Crumbl Franchising, LLC (collectively, "Defendants" or "Crumbl"), individually and on behalf of all others similarly situated, and complain and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other

CLASS ACTION COMPLAINT

matters, upon information and belief, including investigation conducted by their attorneys.

## **INTRODUCTION**

1.      Crumbl is the fastest growing gourmet cookie business in the nation with more than 600 franchisee stores in 47 states nationwide.

2.      Crumbl is known for its signature scratch-made cookies which are sold in its distinctive modern storefronts where customers enjoy a seamless automated ordering experience using the Crumbl App[1], which is available as a downloadable mobile app, on the company's website, or on iPads displayed in the stores.

3.      In fact, Crumbl identifies itself as a "Cookie Tech Company," that is backed by "slick, smooth tech."[2]

4.      The Crumbl App is a vital part of Crumbl's business strategy and the primary way it differentiates itself from competing bakeries.

5.      The Crumbl App contains Crumbl's weekly rotating menu of flavors and allows customers to order Crumbl's products for delivery, pickup, catering, shipping, or gifting.

---

[1] As used herein, the Crumbl App refers to all of Crumbl's electronic ordering software, including, but not limited to, the mobile app (which is available for download to a customer's individual mobile device), web-based ordering system, and in-store point-of-sale system. Based on information and belief, these formats all use identical technology to manage customer orders and complete payment.

[2] https://crumblcookies.com/franchising# (Last accessed August 21, 2023)

6.     For in-store purchases, customers utilize the Crumbl App to enter their order on the store's iPads for a contactless purchase. Even when ordering from an employee in store, customers still must use the Crumbl App at the point-of-sale to complete the sale.

7.     However, Crumbl's promotion of a smooth, "tech-driven" customer experience hides a more sinister truth: every time a customer utilizes the Crumbl App, Crumbl charges a carefully concealed 2.95% "Service Fee." As a result of this automatic fee, customers pay a uniformly higher price for Crumbl's products than advertised on the menu.

8.     Crumbl's misconduct has caused Plaintiffs and putative Class Members to suffer injury in fact, including economic damages. Accordingly, Plaintiffs bring this suit to halt Crumbl's unfair and deceptive trade practices.

9.     Plaintiffs seek damages, injunctive relief, and other equitable remedies for themselves and the proposed classes.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more putative Class Members; (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (iii) there is minimal diversity because Plaintiffs and Defendant are citizens of different states. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

11.    This Court has personal jurisdiction over Defendants because Defendants have substantial aggregate contacts with this District, including engaging in conduct that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed itself of the laws of the United States and the State of California.

12.    In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, Defendants transact business in this District, and Defendants have intentionally availed themselves of the laws and markets within this District.

## PARTIES

13.    At all relevant times, Plaintiff Lisa Watson has resided in Stanislaus County, California.

14.    At all relevant times, Plaintiff Angela Keers has resided in Shasta County, California.

15.    Defendant Crumbl LLC is a Utah limited liability company with its principal place of business in Orem, Utah. Based on information and belief, Crumbl LLC is responsible for the day-to-day operations of the Crumbl business, including marketing, sales, and advertising.

16.    Defendant Crumbl IP, LLC is a Utah limited liability company with its principal place of business in Orem, Utah. Based on information and belief, Crumbl

IP, LLC is responsible for all of Crumbl LLC's intellectual property, including the proprietary technology used to create and/or support its Crumbl App.

17. Defendant Crumbl Franchising, LLC is a Utah limited liability company with its principal place of business in Orem, Utah. Based on information and belief, Crumbl Franchising, LLC is responsible for the management and operation of Crumbl's franchising, including establishing standards and policies for franchisees.

18. Based on information and belief, Defendants operate as alter egos.

## FACTUAL ALLEGATIONS

19. Crumbl first opened its doors in 2017 in Logan, Utah, as a bakery selling fresh-baked chocolate chip cookies for takeout and delivery.

20. As Crumbl continued to grow, it introduced the concept of a rotating menu, which was officially established in December 2018. Each week, Crumbl offers new flavors of cookies in addition to its signature chocolate chip cookie. Because the flavors rarely, if ever, repeat, customers are encouraged to visit frequently in order to try all of Crumbl's unique limited-edition cookies.

21. Crumbl's cookies are a high-end, gourmet product which retail for more than $4 each, making them significantly more expensive than the vast majority of baked goods sold at grocery stores, coffee shops, and bakeries.

22. Demand for Crumbl's cookies has increased dramatically in recent years, owing in part to its unique flavors and "made-for-Instagram" branding. To that end,

5

Crumbl maintains an active social media presence, with more than 3.3M followers on Instagram and 6.3M followers on TikTok.

23.     Since opening, Crumbl has expanded to over 890 bakeries throughout all 50 states. These stores operate largely as franchises. All of the franchise locations are required to use the Crumbl App as part of their franchise agreement with Defendants. Likewise, franchisees must adhere to all of Crumbl's pricing policies.

24.     The Crumbl App allows customers to view the weekly menu, including the retail price of each item, and to purchase items for pickup or delivery. When making a purchase through the Crumbl App, customers select their preferred store and the order is automatically submitted to that location.

25.     Any time a customer orders through the Crumbl App, whether on a personal device or on a tablet in a Crumbl retail store, they are charged a uniform 2.95% Service Fee.

26.     This Service Fee is not reflected in the prices listed on Crumbl's menus.

27.     Despite the fact that Crumbl uniformly charges the Service Fee through the Crumbl App, at no point is the Service Fee disclosed to consumers.

28.     Based on information and belief, Crumbl designs, maintains, operates, and otherwise owns the Crumbl App and all of its integrated software and other intellectual property. Individual franchise owners are unable to make changes to the design or functionality of the Crumbl App.

29.     When placing an order on the mobile app, prior to payment customer are shown a breakdown of their charges. An example of this screen is reproduced below:

CLASS ACTION COMPLAINT

1

2      30.    A small icon appears next to the "Taxes & Fees" on the payment screen.

3  This icon, which is a light gray color that blends seamlessly into the page's background,

4

5  is nearly imperceptible to reasonable consumers due to its color and font size.

6

7

8      Subtotal:                          $4.28

9

10     Taxes & Fees: ⊙                     $0.49

11     Tip:                               $3.00

12

13     TOTAL:                             $7.77

14

15

16

17     31.    If a consumer were to notice the icon and click on it, only then is the

18  following "Price Breakdown" displayed:

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

32. Given that the vast majority of American consumers already expect to pay sales tax on their purchase, Crumbl purposefully hides this charge among state taxes where it is unlikely to be discovered by reasonable consumers.

33. Furthermore, because the 2.95% Service Fee represents mere pennies when applied to the retail price of a single cookie, reasonable consumers are unlikely to notice the charge or investigate it further.

34.    A nearly identical display is used when consumers order through the Crumbl App on the website[3]:



---

[3] The web-based Crumbl App only allows customers to place delivery orders. When a customer selects the carryout option, they are directed to use the mobile app.

| **Price breakdown** | |
|---|---|
| **Subtotal:** | **$13.95** |
| **Delivery Fee:** | **$6.99** |
| **Taxes & Fees:** | **$2.17** |
| Sales Tax (8.24%): | $1.76 |
| Service Fee (2.95%): | $0.41 |
| **Tip:** | **$2.00** |
| **TOTAL:** | **$25.11** |

35.     Even if a customer were to discover the Service Fee when ordering online or through the mobile app, nowhere in the Crumbl App or on Crumbl's website is the nature of this fee explained.

36.     Crumbl charges this Service Fee even when customers purchase products directly from a cashier in the retail store.

37.     There is no opportunity for customers to discover this charge until after they have already completed their purchase.

38.     Nowhere at the point-of-sale or anywhere else in the retail store is the Service Fee disclosed to customers.

CLASS ACTION COMPLAINT

39.     Likewise, the menu fails to list the prices of the products with the Service Fee, in violation of Cal. Civ. Code § 1770(a)(20), which requires the total price including any surcharges to be set forth in the advertisement.

40.     Although Crumbl operates on a franchise model, Crumbl still maintains authority and control over franchise locations, including their business operations and pricing schemes. Furthermore, Crumbl maintains all control over the design of the Crumbl App. At all times relevant to this action, Crumbl approved, endorsed, required, aided, or otherwise encouraged franchisees to charge the Service Fee, as evidenced by its design of the Crumbl App which it requires all franchisees to use.

41.     Crumbl had numerous feasible alternatives for designing a Crumbl App that would adequately disclose and explain the Service Fee to consumers, yet intentionally chose to employ a design which hid or obscured Crumbl's pricing, thereby confusing or otherwise deceiving reasonable consumers as to the nature and amount of additional fees being charged and the actual retail price of the products.

42.     Plaintiffs and Class Members reasonably relied on Crumbl's posted retail prices in making their purchase decisions, when in reality the price of the products was uniformly higher than the advertised price due to the automatic 2.95% Service Fee imposed at the point of sale.

43.     No reasonable consumer would expect to be charged a "service fee" for the in-store purchase of a consumer product such as baked goods.

44.     Based on information and belief, Crumbl adds this surcharge to help cover increasing costs of operations, instead of raising the prices on its menu. By utilizing the deceptive Service Fee, consumers are deceived into thinking their purchase will cost less at the time they order it.

45.     In the face of increased competition and copycat products, Crumbl knows that raising its prices could result in the loss of sales. Thus, Crumbl has incentive to hide additional costs to give the illusion to consumers that its prices have remained constant—all the while increasing its profits by nearly 3%.

## **PLAINTIFFS' FACTS**

### *Plaintiff Lisa Watson's Facts*

46.     Plaintiff Lisa Watson is a resident of Modesto, California who has purchased Crumbl products regularly since at least 2021, with her most recent purchases occurring at the Crumbl store in Modesto, California in March 2023.

47.     Plaintiff Watson utilized the Crumbl App to purchase Crumbl's products through the mobile Crumbl App, which was installed on her phone.

48.     Plaintiff Watson paid through the app using a credit card.

49.     Prior to making her purchase, Plaintiff Watson reviewed the menu and other information displayed on the Crumbl App, but at no point was she informed she would be charged a Service Fee for using the Crumbl App.

50.     Plaintiff Watson reviewed her order prior to its submission through the Crumbl App, but nowhere did she see a disclosure of the Service Fee before

completing her purchase.

51.   In making her purchase, Plaintiff Watson reasonably believed the bundled "Taxes & Fees" she paid in addition to the retail price were the local and/or state sales taxes assessed on any sale of goods. It was only upon further review of her digital receipt on the mobile app that she realized that the "Taxes & Fees" she was charged on her Crumbl purchases over the course of multiple years included a 2.95% Service Fee *in addition to* sales taxes.

52.   Despite reviewing the Crumbl App, Plaintiff Watson was unable to find any explanation of the Service Fee, nor was she able to determine the reason she was charged the service fee.

53.   Plaintiff Watson was deceived into paying an unexpected fee without adequate explanation or disclosure, and she could not—and did not—reasonable foresee this fee.

54.   Plaintiff Watson purchased Crumbl's products in reliance on the menu's pricing as set out on the Crumbl App.

55.   As a result of Crumbl's deceptive and unfair practices, Plaintiff Watson sustained economic injury by paying 2.95% more than the menu's stated price.

*Plaintiff Angela Keers's Facts*

56.   Plaintiff Angela Keers is a resident of Redding, California who has purchased Crumbl products numerous times, with her most recent purchases occurring at the Crumbl store in Redding, California in April 2023.

57.   Plaintiff Keers utilized the Crumbl App to purchase Crumbl's products through the mobile Crumbl App, which was installed on her phone.

58.   Plaintiff Keers paid through the app using a credit card.

59.   Prior to making her purchase, Plaintiff Keers reviewed the menu and other information displayed on the Crumbl App, but at no point was she informed she would be charged a Service Fee for using the Crumbl App.

60.   Plaintiff Keers reviewed her order prior to its submission through the Crumbl App, but nowhere did she see a disclosure of the Service Fee before completing her purchase.

61.   In making her purchase, Plaintiff Keers reasonably believed the bundled "Taxes & Fees" she paid in addition to the retail price were the local and/or state sales taxes assessed on any sale of goods. It was only upon further review of her digital receipt on the mobile app that she realized that the "Taxes & Fees" she was charged on her Crumbl purchases over the course of multiple years included a 2.95% Service Fee in addition to sales taxes.

62.   Despite reviewing the Crumbl App, Plaintiff Keers was unable to find any explanation of the Service Fee, nor was she able to determine the reason she was charged the service fee.

63.   Plaintiff Keers was deceived into paying an unexpected fee without adequate explanation or disclosure, and she could not—and did not—reasonable foresee this fee.

64.     Plaintiff Keers purchased Crumbl's products in reliance on the menu's pricing as set out on the Crumbl App.

65.     As a result of Crumbl's deceptive and unfair practices, Plaintiff Keers sustained economic injury by paying 2.95% more than the menu's stated price.

### FED. R. CIV. P. 9(b) ALLEGATIONS
### (Affirmative and By Omission)

66.     Although Crumbl is in the best position to know what content it placed on its Crumbl App, website(s), and in its retail stores during the relevant timeframe, Plaintiffs satisfy the requirements of Rule 9(b) by alleging the following facts with particularity:

67.     **WHO**: Crumbl unfairly, deceptively, and or misleadingly imposed a Service Fee on customers making purchases through its Crumbl App.

68.     **WHAT**: Crumbl's conduct here was, and continues to be, fraudulent because it hid, concealed, obfuscated, or otherwise disguised additional charges to consumers purchasing its products. Crumbl's conduct deceived Plaintiffs and Class Members into believing that they were paying the retail price for Crumbl's products, when in reality they were being charged an undisclosed 2.95% Service Fee in addition to the retail price. At all times relevant to this action, Crumbl required Plaintiffs and Class Members to make electronic purchases through its Crumbl App where they then imposed the Service Charge. Crumbl charged a Service Fee to all customers purchasing its products using an electronic payment method, including in retail stores at the point-of-sale. Crumbl failed to post, display, or otherwise adequately disclose the charges to

customers either on the Crumbl App or in stores. Crumbl knew, or should have known, that it failed to adequately disclose the true price of its products and that this information is material to reasonable consumers, including Plaintiffs and Class Members, in making their purchasing decisions.

69. **WHEN**: Crumbl engaged in these unfair, deceptive, or otherwise misleading practices during the putative Class periods and at the time Plaintiffs and Class Members purchased the Crumbl products, prior to and at the time Plaintiffs and Class Members made claims after realizing the unlawful pricing scheme, and continuously throughout the applicable Class periods.

70. **WHERE**: Crumbl's unfair and deceptive pricing scheme was uniformly applied to consumers purchasing Crumbl's products through its Crumbl App, both in retail stores and via personal electronic devices. Crumbl's website, advertising, and other marketing materials similarly failed to explain or otherwise disclose the Service Fee being charged through the Crumbl App.

71. **HOW**: Crumbl hid, obfuscated, or otherwise concealed from consumers its imposition of a Service Fee by combining the charges with lawful taxes in order to prevent consumers from discovering the additional charges. Even if consumers were to discover the Service Fee through their own investigation, Crumbl failed to explain or adequately disclose the nature of the Service Fee or why it was imposed.

72. **WHY**: Crumbl engaged in its unfair and deceptive pricing scheme in order to induce Plaintiffs, Class Members, and all reasonable consumers to purchase

CLASS ACTION COMPLAINT

its products by representing the a lower retail price, thus uniformly increasing its profits by 2.95%.

73.   **INJURY**: Plaintiffs and Class Members were injured by purchasing an item off of the menu in reliance on the menu price when in fact the total cost was 2.95% higher.

## <u>CLASS ACTION ALLEGATIONS</u>

74.   Plaintiffs bring this action individually and as representatives of all those similarly situated, pursuant to Fed. R. Civ. P. 23, on behalf of themselves and the members of the following proposed nationwide class ("Nationwide Class"):

> **During the fullest period allowed by law, all persons in the United States who made a purchase from Crumbl through its Crumbl App within the applicable statute of limitations, until the date notice is disseminated.**

75.   Plaintiffs bring this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23, on behalf of herself and the members of the following subclass ("California Class"):

> **During the fullest period allowed by law, all persons in the state of California who made a purchase from Crumbl through its Crumbl App within the applicable statute of limitations, until the date notice is disseminated.**

76.   Specifically excluded from these definitions are: (1) Defendants, any entity in which Defendants have a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel. Plaintiffs reserve the right to amend the Class definition as necessary.

77.   <u>Numerosity</u>: The Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members is presently unknown, it likely consists of at least thousands of people throughout the United States, as well as in the State of California. The number of Class Members can be determined by sales information and other records. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. The Class is readily identifiable from information and records in the possession of Defendants.

78.   <u>Typicality</u>: The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class Members, purchased the Defendants' products that were unfairly, deceptively, or misleadingly priced through the imposition of a uniform Service Fee. Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that, inter alia, they have incurred or will continue to incur damage as a result of overpaying for a product due to Defendants' business practices. Furthermore, the factual basis of Defendants' misconduct is common to all Class Members because Defendants have engaged in systematic deceptive and fraudulent behavior that was deliberate and results in the same injury to all Class Members.

79.   <u>Commonality</u>: Common questions of law and fact exist as to all Members of the Class. These questions predominate over questions that may affect only individual Class Members because Defendants have acted on grounds generally applicable to the Class. Such common legal or factual questions include, inter alia:

CLASS ACTION COMPLAINT

(a)   Whether Defendants created, designed, reviewed, and/or approved the design of the Crumbl App;

(b)   Whether Defendants adequately disclosed its policy of charging a higher price for transactions made using the Crumbl App;

(c)   Whether Defendants uniformly charged a Service Fee on all electronic transactions;

(d)   Whether the Service Fee would deceive a reasonable consumer;

(e)   Whether Defendants required, approved, permitted, or otherwise encouraged its franchisees to impose a Service Fee;

(f)   Whether Defendants' violations of the law were committed knowingly and/or intentionally;

(g)   Whether Plaintiffs and Class Members suffered legally cognizable damages as a result of Defendants' misconduct;

(h)   Whether Plaintiffs and Class Members are entitled to damages, treble damages, civil penalties, punitive damages, and/or injunctive relief.

80.   <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of Class Members. They have no interests antagonistic to those of Class Members. Plaintiffs retained attorneys experienced in the prosecution of class actions, including those alleging unfair and deceptive trade practices, and Plaintiffs intend to prosecute this action vigorously.

81.   <u>Injunctive/Declaratory Relief</u>: The elements of Rule 23(b)(2) are met.

CLASS ACTION COMPLAINT

Defendants will continue to commit the unlawful practices alleged herein, and Plaintiffs and Class Members will continue to be deceived by Defendants' deceptive practices. Defendants have acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief, public injunctive relief, and corresponding declaratory relief are appropriate respecting the Class as a whole. Injunctive relief, and specifically public injunctive relief, is necessary in this action.

82.   <u>Predominance and Superiority</u>: Plaintiffs and Class Members have all suffered and will continue to suffer risk of harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high given the average price point of the Products and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

83.   Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

CLASS ACTION COMPLAINT

84.     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class appropriate.

**COUNT I**
**Violation of the California Consumer Legal Remedies Act**
**("CLRA"), Civil Code §§ 1750, *et seq.***
**(On Behalf of Plaintiffs and the California Class)**

85.     Plaintiffs, individually and on behalf of themselves and the California Class and repeat and re-allege all previous paragraphs as if fully included herein.

86.     The conduct described herein took place in the State of California and constitutes unfair methods of competition or deceptive acts or practices in violation of the Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, et seq.

87.     The CLRA applies to all claims of all California Class Members because the conduct which constitutes violations of the CLRA by Defendant occurred within the State of California.

88.     Plaintiffs and California Class Members are "consumers" as defined by Civil Code § 1761(d).

89.     The Crumbl Products qualify as "goods" as defined by Civil Code § 1761(a).

90.     Plaintiffs and the California Class Members' purchases of the Crumbl Products are "transactions" as defined by Civil Code § 1761(e).

91.     As set forth below, the CLRA deems the following unfair methods of

CLASS ACTION COMPLAINT

competition and unfair or deceptive acts or practices undertaken by any person in a

transaction intended to result or which does result in the sale or lease of goods or

services to any consumer as unlawful.

> (a)    "Advertising goods or services with intent not to sell them as advertised." Civil Code § 1770(a)(9); and
>
> (b)    "Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays, and media advertising, in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product." Civil Code § 1770(a)(20).

92.    Defendants engaged in unfair competition or unfair or deceptive acts or

practices in violation of Civil Code §§ 1770(a)(9) and (a)(20) when it represented,

through its advertising and other express representations, the price of the Crumbl

Products with intent not to sell them at the advertised price and without the legally

required disclosures.

93.    As detailed in the body of this Complaint, Defendants have repeatedly

engaged in conduct deemed a violation of the CLRA and have made representations

regarding the price of the Crumbl Products which are false due to the uniform

imposition of the Service Fee described herein. Indeed, Defendants concealed the true

price of the Products, and the true nature of the "Taxes & Fees" they were charging

on each purchase, from Plaintiffs and California Class Members.

94.    No reasonable consumer would expect the "Taxes & Fees" charged by

Defendants to include an unlawful Service Fee in addition to lawful state and local

sales tax.

95.    Defendants' misrepresentations were material to Plaintiffs' and California Class Members' decision to purchase the products with an electronic form of payment.

96.    Defendants willfully employed a scheme designed to conceal its additional Service Fee, and did so willfully, wantonly, and with reckless disregard for the truth.

97.    As a result of Defendants' omissions and misrepresentations, Plaintiffs and California Class Members purchased and paid for products that did not conform to Defendants' advertised prices, and they were deprived of the benefit of their bargain and spent money on products that they would not have purchased, or would have purchased on different terms, had they known the true facts regarding the Service Fee.

98.    These business practices are misleading and/or likely to mislead consumers and should be enjoined.

99.    Pursuant to Cal. Civ. Code § 1782, Plaintiffs notified Defendants in writing by certified mail sent on August 21, 2023, of its violations of § 1770 described above and demanded that it correct the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to do so. If Defendants do not agree to rectify the problems identified and give notice to all affected consumers within 30 days of the date of written notice, Plaintiffs will amend this Complaint to seek actual, punitive and statutory damages, as appropriate.

100.    A declaration establishing that venue in this District is proper pursuant

to Cal. Civ. Code § 1780(d) is attached hereto as Exhibit A.

101. In accordance with Civil Code § 1780(a), Plaintiffs and the other California Class Members seek injunctive and equitable relief for Defendants' violations of the CLRA, including an injunction to enjoin Defendants from continuing its deceptive sales practices.

## COUNT II
**Violation of the California False Advertising Law ("FAL")**
**California Business and Professions Code §§ 17500, et seq.**
**On Behalf of Plaintiffs and the California Class)**

102. Plaintiffs bring this count on behalf of themselves and the California Class and repeat and re-allege all previous paragraphs as if fully included herein.

103. The conduct described herein took place within the State of California and constitutes deceptive or false advertising in violation of California Business and Professions Code § 17500.

104. Plaintiffs and Defendants are "person[s]" as defined by California Business and Professions Code § 17506.

105. The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

106. At all times relevant, Defendants' advertising and the listing of prices for items on their menus was false, misleading, and likely to deceive the reasonable

consumer and the public by representing that menu items cost a certain amount, when in reality each item cost 2.95% more than advertised.

107. Defendants engaged in the false and/or misleading advertising and marketing alleged herein with the intent to directly or indirectly mislead consumers as to the cost of their purchases.

108. At the time of its misrepresentations, Defendants were aware that all consumers would be charged the Service Fee. Defendants concealed and omitted and failed to disclose this information to Plaintiffs and California Class Members.

109. In making and publicly disseminating the statements and/or omissions alleged herein, Defendants knew or should have known that the statements and/or omissions were false or misleading, and therefore violated California Business and Professions Code § 17500 et seq.

110. Plaintiffs have standing to pursue claims under the FAL as they reviewed and relied on Defendants' advertising, representations, and marketing materials regarding the Crumbl products, including those contained within the Crumbl app, when selecting and purchasing the products.

111. Plaintiffs and California Class Members have suffered injury in fact and have lost money and/or property as a result of Defendants' false advertising as set forth herein. Plaintiffs and California Class Members have been injured because they paid 2.95% more money to Defendants than was advertised on their menu, and Defendants benefitted from their overpayment.

CLASS ACTION COMPLAINT

112. Defendants' false and misleading advertising presents a continuing threat to consumers, as Defendants continue to add the Service Fee. This will continue to mislead consumers as to the real price of food and beverages in Crumbl stores.

113. As a direct and proximate result of Defendants' actions, as set forth herein, Defendants have received ill-gotten gains and/or profits, including but not limited to money from Plaintiffs and California Class Members who paid an undisclosed Service Fee for the products, increasing the advertised price of the products by 2.95%.

114. Plaintiffs and California Class Members seek injunctive relief, restitution, and disgorgement of any monies wrongfully acquired or retained by Defendants and by means of their deceptive or misleading representations, including monies already obtained from Plaintiffs and California Class Members as provided for by the California Business and Professions Code § 17500.

## **COUNT III**
### **Violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.***
### **(On Behalf of Plaintiffs and the California Class)**

115. Plaintiffs bring this count on behalf of themselves and the California Class and repeat and re-allege all previous paragraphs as if fully included herein.

116. Defendants are "person[s]" as defined by Cal. Bus. & Prof. Code § 17201.

117. Unfair competition is defined by Cal. Bus. & Prof. Code § 17200 as encompassing several types of business "wrongs," four of which are at issue here: (1)

an "unlawful" business act or practice; (2) and "unfair" business act or practice; (3) a "fraudulent" business act or practice; and (4) "unfair, deceptive, untrue or misleading advertising." The definitions of § 17200 are drafted in the disjunctive, meaning each of these "wrongs" operates independently from the others.

118.   Because Defendants have violated Cal. Bus. & Prof. Code § 17500 et seq., Defendants have violated California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq., which provides a cause of action for an "unlawful" business act or practice perpetrated on members of the California public.

119.   Defendants had other reasonably available alternatives to further its legitimate business interest, other than the conduct described herein, such as raising their menu prices.

120.   Plaintiffs and California Class members reserve the right to allege other violations of law, which constitute other unlawful business practices or acts, as such conduct is ongoing and continues to this date.

121.   Defendants' actions and representations constitute an "unfair" business act or practice under Cal. Bus. & Prof. Code § 17200 in that Defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

122.   Without limitation, it is an unfair business act or practice for Defendants to knowingly or negligently represent to the consuming public that its menu prices are

nearly three percent lower than the consumer will actually be charged.

123.   Such conduct by Defendants is "unfair" because it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that consumers are led to believe that Defendants' prices are lower than they actually are once the Service Fee is added to the consumer's bill.

124.   Defendants had other reasonably available alternatives to further their legitimate business interest, other than the conduct described herein, such as raising their menu prices.

125.   Plaintiffs and California Class Members could not have reasonably avoided the injury suffered by each of them.

126.   Defendants' claims and misleading statements were false and/or likely to deceive the consuming public within the meaning of Cal. Bus. & Prof. Code § 17200 et seq. Defendants engaged in fraudulent acts and business practices by knowingly or negligently representing to Plaintiffs and other similarly situated consumers, whether by conduct, orally, or in writing by intentionally advertising their menu prices to be 2.95% less than what Defendants actually intend to charge the consumer.

127.   Defendants knowingly and fraudulently concealed the Service Fee among lawful "Taxes & Fees" in order to prevent Plaintiffs and Class Members from discovering that the prices of the Crumbl products were uniformly higher than advertised. It was unlikely, if not impossible, that Plaintiffs and California Class

Members who purchased Defendants' products would discover the imposition of the Service Fee prior to their purchase. Thus, Plaintiffs and California Class Members could not have reasonably avoided the harm they suffered.

128.   Plaintiffs and Class Members who purchased Crumbl's products suffered an injury by virtue of buying products for which Defendants misrepresented the actual price and/or omitted the true nature of the additional Service Fee they charged to consumers in conjunction with purchase of the products.

129.   The gravity of the harm suffered by Plaintiffs and Class Members who purchased the deceptively priced Crumbl products outweighs any legitimate justification, motive or reason for charging the hidden Service Fee. Accordingly, Defendants' actions are immoral, unethical, unscrupulous and offend the established public policies as set out in federal regulations and are substantially injurious to Plaintiffs and California Class Members.

130.   As a result of Defendants' unlawful, unfair and fraudulent acts and practices, Plaintiffs, on behalf of themselves and all others similarly situated, and as appropriate, on behalf of the general public, seek injunctive relief prohibiting Defendants from continuing these wrongful practices, and such other equitable relief, including full restitution of all improper revenues and ill-gotten profits derived from Defendants' wrongful conduct to the fullest extent permitted by law.

## <u>COUNT IV</u>
**Fraudulent Misrepresentation**
**(On Behalf of Plaintiffs and the Nationwide Class, or, in the Alternative, the California Class)**

131.   Plaintiffs bring this count on behalf of themselves and on behalf of the Nationwide Class, or, in the alternative, the California Class (in this count referred to as the "Class" Members), and hereby repeat and re-allege all previous paragraphs, as if fully included herein.

132.   At all times during the relevant time period, Defendants represented that they charged the posted retail price for their products.

133.   Defendants knew that this representation was false due to their uniform imposition of a 2.95% Service Fee in addition to the retail price.

134.   At all times relevant to this action, Defendants designed and otherwise controlled the Crumbl App, including how the Service Fee was communicated to consumers.

135.   Although Defendants could have clearly disclosed the Service Fee, they knowingly concealed this fee among other lawful taxes in order to prevent consumers from discovering the true price of its products.

136.   Defendants intentionally concealed and/or failed to disclose material facts for the purpose of inducing Plaintiffs and Class Members to act thereon.

137.   Plaintiffs and Class Members justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment, as evidenced by their purchase of Defendants' products.

138.   Plaintiffs and Class Members were damaged as a result of Defendants' misrepresentations by paying a uniformly higher price than they reasonably expected

to pay based on Defendants' representations.

139.   Plaintiffs and Class Members are entitled to all relief the Court proper as a result of Defendants' actions described herein.

**COUNT V**
**Unjust Enrichment/Quasi-Contract**
**(On Behalf of Plaintiffs and the Nationwide Class, or, in the Alternative, the California Class)**

140.   Plaintiffs bring this count on behalf of themselves and on behalf of the Nationwide Class, or, in the alternative, the California Class (in this count referred to as the "Class" Members), and hereby repeat and re-allege all previous paragraphs, as if fully included herein.

141.   Defendants' unfair and unlawful contract includes, among other things, making false and misleading representations and omissions of material facts, as set forth in this Complaint. Defendants' acts and business practices offend the established public policy of California, as there is no societal benefit from false advertising, only harm. While Plaintiffs and Class Members were harmed at the time of purchase, Defendants were unjustly enriched by its misrepresentations and omissions.

142.   Plaintiffs and Class Members were harmed when purchasing Defendants' products as a result of Defendants' material representations and omissions regarding their price, as described in this Complaint. Plaintiffs and each Class Member purchased Defendants' products at a higher price than advertised on Defendants' menu and other marketing and advertising statements. Plaintiffs and Class Members have suffered injury in fact and lost money as a result of paying the higher price they paid for the

products as a result of Defendants' unlawful, unfair, and fraudulent business practices.

143.   Defendants' conduct allows Defendants to knowingly realize substantial revenues from selling their Products at the expense of, and to the detriment of, Plaintiffs and Class Members, and to Defendants' benefit and enrichment. Defendants' retention of these benefits violates fundamental principles of justice, equity, and good conscience.

144.   Plaintiffs and Class Members confer significant financial benefits and pay substantial compensation to Defendants for their Products, which are not actually priced as Defendants represent.

145.   Under common law principles of unjust enrichment and quasi-contract, it is inequitable for Defendants to retain the benefits conferred by Plaintiffs' and Class Members' overpayments.

146.   Plaintiffs and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and Class Members may seek restitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully requests that this Court:

A.   Certify the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.   Name Plaintiffs as Class Representatives of the Classes;

C.   Name Plaintiffs' counsel as Class Counsel for the Classes;

D.   Award damages, including compensatory, exemplary, and statutory damages, to Plaintiffs and the Classes in an amount to be determined at trial;

E.   Permanently enjoin Defendants from engaging in the wrongful and unlawful conduct alleged herein;

F.   Award Plaintiffs and the Classes their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

G.   Award Plaintiffs and the Classes pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

H.   Award such further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

DATED:  August 21, 2023            Respectfully submitted,

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLP**

/s/ Alex Straus
Alex Straus (SBN 321366)
astraus@milberg.com
280 S. Beverly Drive, PH Suite

Beverly Hills, CA 90212
(866) 252-0878 (phone)
(615) 921-6501 (fax)

Erin Ruben*
900 W. Morgan St.
Raleigh, NC 27603
T: 865-247-0080
F: 865-522-0049
eruben@milberg.com

Harper T. Segui*
825 Lowcountry Blvd., Suite 101
Mount Pleasant, SC 29464
T: 919-600-5000
hsegui@milberg.com

Rachel Soffin*
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080
F: 865-522-0049
rsoffin@milberg.com

*Motion to be admitted *pro hac vice* forthcoming.

CLASS ACTION COMPLAINT