UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA WATSON and ANGELA KEERS, individually and on behalf of all those similarly situated, | No. 2:23-cv-01770-DJC-CKD |
| Plaintiffs, | ORDER |
| v. | |
| CRUMBL LLC, CRUMBL, IP, LLC, CRUMBL FRANCHISING, LLC, and CRUMBL ENTERPRISES, LLC, | |
| Defendants. | |

California law generally prohibits businesses from misrepresenting the costs of their products.  Here, Crumbl, which sells a variety of gourmet cookies, added a 2.95% service fee to each order.  While not disclosed in Crumbl's app used to purchase cookies, during checkout users could click a question mark icon on a line reading "Taxes and Fees" which would send the user to a different screen that would breakout the applicable taxes as well as the 2.95% Service Fee.  The principal issue before the Court is whether a reasonable customer would be misled by the advertised prices for the cookies, which did not include the service fee.  Concluding that Plaintiffs have adequately alleged they would be, the Court denies Defendants' pending Motion to

1  Dismiss (ECF No. 4) in part, but grants the Motion with respect to Plaintiffs'

2  inadequately pled claims for equitable relief.

3  **BACKGROUND**

4      Defendants Crumbl LLC, Crumbl IP, LLC, Crumbl Franchising, LLC, and Crumbl

5  Enterprises, LLC (collectively, "Defendants" or "Crumbl") sell gourmet cookies and

6  beverages which customers can purchase for takeout or delivery at more than 890

7  locations throughout all fifty states.  (First Am. Compl. ("FAC") (ECF No. 17) ¶¶ 1, 20,

8  24.)  Crumbl offers a weekly rotating menu of cookie flavors, and advertises their

9  menu on the Crumbl App,[1] a mobile application which is available for download on a

10 customer's individual mobile device and is also accessible on Crumbl's website.  (*Id.*

11 ¶¶ 3–4, 21, 25.)  Customers can use the App to purchase items for pickup or delivery

12 at their local Crumbl location.  (*Id.* ¶ 25.)  Customers also use the App to complete in-

13 store purchases.  (*Id.* ¶ 6.)  Thus, all Crumbl sales are performed using the App.

14     Beginning in 2018, Crumbl began charging a 2.95% Service Fee on all

15 purchases.  (*Id.* ¶ 7.)  This Service Fee was automatically applied to every order,

16 whether the order was placed in-store or online.  (*Id.* ¶¶ 26, 37.)  When placing an

17 order in the App, customers were presented with a payment screen which displayed

18 the following line items: "Subtotal," "Taxes & Fees," "Tip," and finally "TOTAL."  (*Id.*

19 ¶ 30.)  Next to the line item "Taxes & Fees" was a small "?" icon.  (*Id.* ¶ 31.)  Only if a

20 customer clicked on the "?" icon did they see a price breakdown showing the "Sales

21 Tax" and "Service Fee."  (*Id.* ¶ 32.)  Customers were able to confirm their purchase on

22 the payment screen by clicking a "PAY" or "PLACE ORDER" button beneath the

23 "TOTAL."  (*Id.* ¶¶ 30, 35.)

24     The Service Fee was not disclosed in any signage in retail stores, nor was it

25 disclosed in any of Crumbl's other marketing or advertising materials.  (*Id.* ¶¶ 39–40.)

26

27 _____

28 [1] Crumbl designs, maintains, operates, and owns the App, along with all of its integrated software and intellectual property.  (FAC ¶ 29.)

Crumbl has not explained what service the fee pays for.  (*Id.* ¶ 36.)  However, Crumbl ceased charging the Service Fee in May 2023.  (Mot. Dismiss (ECF No. 24) at 9 n.1.)

Plaintiffs Lisa Watson and Angela Keers, who are California residents, allege they purchased Crumbl's products numerous times using the App on their phones, with their most recent purchases occurring in March and April of 2023.  (FAC ¶¶ 47, 48, 57, 58.)  Plaintiffs allege they relied on the retail prices listed in the App and, despite reviewing the menu and other information displayed, did not see any disclosure of the Service Fee prior to completing their purchases.  (*Id.* ¶¶ 50–51, 60–61.)  Plaintiffs further allege they believed the "Taxes & Fees" charged were local and/or state sales tax.  (*Id.* ¶¶ 52, 62.)  It was only recently that Plaintiffs discovered they had been charged the Service Fee on each of their purchases over the course of many years.  (*Id.* ¶¶ 52, 62.)  Despite reviewing the App, Plaintiffs were unable to determine why they were charged the Service Fee.  (*Id.* ¶¶ 53, 54, 63, 64.)  Accordingly, Plaintiffs allege that the Service Fee was deceptive and that they were harmed because there was no way for them to know about the Service Fee until after they completed their purchases.  (*Id.* ¶¶ 38, 45.)

Based on these allegations, Plaintiffs brought this class action under the Class Action Fairness Act on August 21, 2023, asserting claims against Crumbl for (1) violations of the California Consumer Law Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750–1784, (2) violations of California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500–17509, (3) violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210, (4) fraudulent misrepresentation, and (5) unjust enrichment/quasi-contract.  (FAC ¶¶ 86–148.)  Plaintiffs bring claims one through three on behalf of a proposed California Class[2] and claims four through five on behalf of a proposed Nationwide Class,[3] or alternatively, the California Class.  (*Id.* ¶¶ 75–76.)  Plaintiffs seek damages, injunctive relief, and other equitable remedies.

---

[2] As defined in the First Amended Complaint.  (*See* FAC ¶ 76.)
[3] As defined in the First Amended Complaint.  (*See* FAC ¶ 75.)

1    Defendants brought the pending Motion to Dismiss on April 15, 2024, under

2  Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing (1) Plaintiffs lack

3  standing to seek injunctive relief because they fail to allege a risk of future harm;

4  (2) Plaintiffs are not entitled to equitable relief because they have an adequate remedy

5  at law; (3) Plaintiffs fail to state CLRA, FAL, or UCL claims because a reasonable

6  consumer would not be misled by the Service Fee and the way in which it was

7  disclosed; (4) Plaintiffs fail to adequately plead the elements of a fraudulent

8  misrepresentation claim; (5) Plaintiffs fail to state an unjust enrichment/quasi-contract

9  claim because there is no stand-alone cause of action for unjust enrichment under

10  California law and Plaintiffs fail to allege fail to allege the elements of quasi-contract;

11  and (6) Plaintiffs cannot bring claims on behalf of the Nationwide Class under

12  California law or under the laws of states other than California.  (Mot. Dismiss at 2.)

13    The Court held a hearing on May 23, 2024, with Erin Ruben appearing for

14  Plaintiffs, and Jaikaran Singh and Jordan Bledsoe appearing for Defendants.  The

15  matter was submitted.

16                                      **LEGAL STANDARD**

17    A party may move to dismiss a complaint for "lack of subject matter jurisdiction"

18  under Federal Rule of Civil Procedure 12(b)(1).  "The party asserting federal subject

19  matter jurisdiction bears the burden of proving its existence."  *Chandler v. State Farm*

20  *Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  In a "facial attack" under Rule

21  12(b)(1), "the challenger asserts that the allegations contained in a complaint are

22  insufficient on their face to invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*,

23  373 F.3d 1035, 1039 (9th Cir. 2004).  "The district court resolves a facial attack as it

24  would a motion to dismiss under Rule 12(b)(6): [a]ccepting the plaintiff's allegations as

25  true and drawing all reasonable inferences in the plaintiff's favor, the court determines

26  whether the allegations are sufficient as a legal matter to invoke the court's

27  jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  "By contrast, in a

28  factual attack, the challenger disputes the truth of the allegations that, by themselves,

1  would otherwise invoke federal jurisdiction." *Meyer*, 373 F.3d at 1039.  In resolving a

2  factual attack on jurisdiction, the district court may review evidence beyond the

3  complaint without converting the motion to dismiss into a motion for summary

4  judgment, and the court need not presume the truthfulness of the plaintiff's

5  allegations.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

6       A party may also move to dismiss for "failure to state a claim upon which relief

7  can be granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the

8  complaint lacks a "cognizable legal theory or sufficient facts to support a cognizable

9  legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir.

10  2008).  The court assumes all factual allegations are true and construes "them in the

11  light most favorable to the nonmoving party."  *Steinle v. City & County of San*

12  *Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019).  However, if the complaint's

13  allegations do not "plausibly give rise to an entitlement to relief" the motion must be

14  granted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A complaint need contain only a

15  "short and plain statement of the claim showing that the pleader is entitled to relief,"

16  Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550

17  U.S. 544, 555 (2007).  However, this rule demands more than unadorned accusations;

18  "sufficient factual matter" must make the claim at least plausible.  *Iqbal*, 556 U.S. at

19  678.  In the same vein, conclusory or formulaic recitations of elements do not alone

20  suffice.  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that

21  allows the court to draw the reasonable inference that the defendant is liable for the

22  misconduct alleged."  *Id.*

23                                **DISCUSSION**

24  **I.    Request for Judicial Notice**

25       Plaintiffs request the Court take judicial notice of (1) a news article entitled

26  *Crumbl Cookies started as a 'fun side hustle'—now it brings in $1 billion a year: It's*

27  *'something that anyone can do,'* by Tom Huddleston Jr., published on CNBC on

28

1  Saturday, February 17, 2024, at 10:00 am EST ("Exhibit 1"), and (2) California Senate

2  Bill No. 478 ("Exhibit 2").  (Pls.' Req. Judicial Notice ("Pls.' RJN") (ECF No. 28) at 2.)

3      Defendants oppose Plaintiffs' request as to Exhibit 1, arguing the facts in the

4  article are not relevant to any issue raised in their Motion to Dismiss.  (Opp'n Pls.' RJN

5  (ECF No. 32) at 2–3.)  Defendants also argue that Plaintiffs wish to introduce the article

6  to "establish the truth of the number of cookies Crumbl sold in 2022," but courts may

7  not take judicial notice of an article for the truth of its contents.  (*Id.* at 3–4.)

8      The Court agrees that "[t]o the extent the court can take judicial notice of . . .

9  news articles, it can do so only to indicate what was in the public realm at the time, not

10 whether the contents of those articles were in fact true."  *EVO Brands, LLC v. Al Khalifa

11 Grp. LLC*, 657 F. Supp. 3d 1312, 1323 (C.D. Cal. 2023).  Accordingly, the Court takes

12 judicial notice of Exhibit 1, but declines to notice that the article's contents are true.

13 Further, courts may take judicial notice of legislative bills.  *California v. Infineon Techs.

14 AG*, 531 F. Supp. 2d 1124, 1172 (N.D. Cal. 2007).  Accordingly, the Court grants

15 Plaintiffs' request as to Exhibit 2.

16 **II.    Plaintiff's Entitlement to Equitable Relief**

17     Plaintiffs only seek injunctive or other equitable relief for their UCL, FAL, and

18 unjust enrichment claims.  (*See* FAC ¶¶ 116, 132, 148.)  Plaintiffs also seek injunctive

19 or other equitable relief for their CLRA claim.  (*Id.* ¶¶ 101-3.)  Defendants argue

20 (1) Plaintiffs lack standing to seek injunctive relief because there is no risk of future

21 harm, and (2) Plaintiffs cannot bring claims for equitable relief because they have not

22 alleged an inadequate remedy at law. (Mot. Dismiss at 21–23.)

23     For the reasons set forth below, the Court will dismiss Plaintiffs' FAL, UCL, and

24 unjust enrichment claims in their entirety with leave to amend.  The Court will also

25 dismiss Plaintiffs' CLRA claim to the extent it seeks equitable remedies with leave to

26 amend.

27 ////

28 ////

### A.  Standing for Injunctive Relief

Defendants argue that Plaintiffs lack standing to pursue injunctive relief as to the Service Fee because Crumbl no longer charges the fee.  (Mot. Dismiss at 22.) Defendants also argue that even if Crumbl charges a Service Fee in future, Plaintiffs are now on notice about the fee, and so cannot be misled by the menu pricing.  (*Id.*) Therefore, Defendants argue Plaintiffs cannot demonstrate any impending injury, and lack standing to obtain injunctive relief.  (*Id.*)

"In a class action, standing is satisfied if at least one named plaintiff meets the requirements."  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). Not only must at least one named plaintiff satisfy constitutional standing requirements, but the plaintiff "bears the burden of showing that he has standing for each type of relief sought."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  In the context of injunctive relief, the standing inquiry requires a plaintiff to demonstrate that they have suffered or are threatened with concrete and particularized legal harm, coupled with a sufficient likelihood that they will be wronged again in a similar way.  *Bates*, 511 F.3d at 985.  This latter inquiry turns on whether the plaintiff has a "real and immediate threat of repeated injury."  *Id.*  The threat of future injury cannot be "conjectural or hypothetical" but must be "certainly impending."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).

Standing is determined as of the commencement of litigation.  *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1170 (9th Cir. 2002).  Defendants state that they ceased charging the challenged Service Fee in May 2023, before this action was filed, and Plaintiffs do not challenge this assertion.  Thus, the harm that Plaintiffs seek to enjoin, deceptive price advertising, no longer exists.   Accordingly, the Court finds that Plaintiffs have not demonstrated a "real and immediate threat of repeated injury" entitling them to injunctive relief.  *Bates*, 511 F.3d at 985.

Plaintiffs urge the Court to find they have standing because "there is a threat of future injury to the general public by the business practice of charging an undisclosed

1  Service Fee." (Opp'n Mot. Dismiss (ECF No. 27) at 15–16.)  While the Court does not

2  discount the possibility that Crumbl could charge a Service Fee again in future,

3  should his happen, Plaintiffs, like other plaintiffs dismissed for lack of standing to seek

4  injunctive relief, could sue Defendants for recommencing the allegedly harmful

5  conduct.  Moreover, if Defendants recommence the objectionable conduct, and stop

6  again to defeat Plaintiff's standing, such conduct would likely fall within the

7  established exception to mootness for disputes that are "capable of repetition, yet

8  evading review." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016)

9  (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).  At this stage, however, given that

10  Defendant voluntarily ceased the conduct at issue prior to the filing of this lawsuit, and

11  in light of the fact that the California Legislature has recently expressly prohibited the

12  conduct at issue,[4] the Court does not find that this exception to mootness applies.

13         Accordingly, the Court dismisses Plaintiffs' CLRA, FAL, and UCL claims to the

14  extent they seek injunctive relief without prejudice.

15         **B.    Availability of an Adequate Remedy at Law**

16         Defendants argue Plaintiffs are not entitled to the other equitable relief they

17  seek (declaratory relief, restitution, and disgorgement of profits) because "[n]owhere

18  in their Complaint do Plaintiffs allege an inadequate remedy at law or facts that would

19  support such an assertion." (Mot. Dismiss at 22–23.)  They are correct.  "[A] federal

20  court must apply traditional equitable principles before awarding restitution under the

21  UCL and CLRA." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir. 2020).

22  This includes the equitable principle that in order to obtain an equitable remedy, a

23  plaintiff must lack an "adequate remedy at law." *Mort v. United States*, 86 F.3d 890,

24  892 (9th Cir. 1996).  Accordingly, a federal plaintiff must "establish that she lacks an

25

26

27  _____
   [4] *See* California Senate Bill No. 478, S.B. 478, 2023–2024 Leg., Reg. Sess. (Cal. 2023), which, as Plaintiffs
   recognize, is intended to curb the pricing practices challenged here.  (*See* Opp'n Mot. Dismiss at 2
28  ("There can be little doubt that California citizens will not be subject to such fees going forward . . . .").)

adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA."[5]  *Sonner*, 971 F.3d at 844.

Courts have differed somewhat as to what *Sonner* mandates at the pleading stage.  Some courts have required plaintiffs to plead specific facts establishing a lack of adequate remedy at law.  *See, e.g., Watkins v. MGA Entertainment, Inc.*, 550 F. Supp. 3d 815, 837 (N.D. Cal. 2021) (dismissing UCL claim where plaintiffs had not alleged any facts establishing that their remedies at law were inadequate).  However, *Sonner* arose after a plaintiff voluntarily dismissed her damages claim on the eve of trial and proceeded only with her "claims for restitution and injunctive relief" to guarantee a bench trial.  *Sonner*, 971 F.3d at 837.  Because of *Sonner's* advanced posture, some courts decline to read it as requiring specific facts at the pleadings stage.  *See, e.g., In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 638 (N.D. Cal. 2020) ("[t]he facts of *Sonner*–where the plaintiff on the eve of trial sought to secure a bench trial under the UCL by foregoing CLRA damages claims that had to be tried to a jury–are inapposite considering the allegations and the posture of" a complaint this early in the case).  Most district courts applying *Sonner* in the Ninth Circuit have "understood it to require that a plaintiff must, at a minimum, *plead* that she lacks adequate remedies at law if she seeks equitable relief."  *Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 875 (N.D. Cal. Sept. 23, 2021) (emphasis in original) (collecting cases).

Here, Plaintiffs seek declaratory relief under the CLRA, restitution under the FAL and UCL, and disgorgement of profits under the FAL and for unjust enrichment.  (*See* FAC ¶¶ 103, 116, 132, 148.)  However, Plaintiffs do not allege that legal remedies are inadequate.  Instead, they argue that "Rule 8 allows Plaintiffs to plead in the alternative, including alternative or different types of relief."  (Opp'n Mot. Dismiss at 16.)  While this is true, under *Sonner*, Plaintiffs must at a minimum allege they have no

---

[5] While *Sonner's* holding was limited to restitution, district courts since have held that the inadequate remedy at law requirement applies to all forms of equitable relief.  *See Shay v. Apple Inc.*, No. 20-cv-1629-GPC-BLM, 2021 WL 1733385, at *3 (S.D. Cal. May 3, 2021) (collecting cases).

1  adequate remedy at law, even at the motion to dismiss stage.  *See Sonner*, 971 F.3d at

2  844; *see also Height St. Skilled Care, LLC v. Liberty Mut. Ins. Co.*, No. 1:21-cv-01247-

3  JLT-BAK-BAM, 2022 WL 1665220, at *7–9 (E.D. Cal. May 25, 2022) ("Because

4  [plaintiff]'s complaint contains no demonstration, explanation, or even allegation that

5  legal remedies would be inadequate as to its claim against [defendant], it cannot

6  survive dismissal."); *Lisner v. Sparc Grp. LLC*, No. 2:21-CV-05713-AB-GJSx, 2021 WL

7  6284158, at *8 (C.D. Cal. Dec. 29, 2021) ("[T]he majority of district courts have held

8  that *Sonner's* reasoning applies at the pleading stage.").

9        Because Plaintiffs fail to allege that they have no adequate remedy at law, the

10  Court dismisses Plaintiffs' UCL, FAL, and unjust enrichment claims, and dismisses

11  Plaintiffs' CLRA claim to the extent it seeks equitable remedies, with leave to amend.

12  **III.   Plaintiffs' CLRA Claim**

13        Plaintiffs claim Defendants violated California Civil Code §§ 1770(a)(9) and (20)

14  "when they represented, through their advertising and other express representations,

15  the price of the Crumbl Products with intent not to sell them at the advertised price

16  and without the legally required disclosures."  (FAC ¶¶ 92–93.)  Plaintiffs allege that

17  Defendants' actions were deceptive because they did not disclose the Service Fee to

18  consumers, bundled and hid the Service Fee within the "Taxes & Fees" line item in the

19  checkout page, and mislabeled the fee as a Service Fee when it is not connected to

20  any service provided by Crumbl.  (*Id.* ¶¶ 28, 31–33, 36–40, 45–46.)

21        Defendants argue that, to state a claim under the CLRA, Plaintiffs must plausibly

22  allege that a reasonable consumer would be misled by the Service Fee.  (Mot. Dismiss

23  at 15.)  Defendants argue that Plaintiffs allegations do not meet this requirement

24  because they adequately disclosed the Service Fee during checkout, no reasonable

25  consumer would be misled by the inclusion of the Service Fee in the "Taxes & Fees"

26  line item, and they have no duty to disclose the reason for the fee.  (*Id.* at 16–19.)

27  Defendants also argue sections 1770(a)(9) and (20) are inapplicable to Plaintiffs' case.

28

1    (*Id.* at 19–21.)  For the reasons discussed below, however, the Court declines to

2    dismiss Plaintiffs' CLRA claim.

3          **A.       Reasonable Consumer Test**

4          The CLRA prohibits "unfair or deceptive acts or practices."  Cal. Civ. Code

5    § 1770.  Together with the UCL and FAL, the CLRA prohibits "not only advertising

6    which is false, but also advertising which, although true, is either actually misleading

7    or which has a capacity, likelihood or tendency to deceive or confuse the public."

8    *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (quoting *Williams*

9    *v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)).

10         Violations of the CLRA are analyzed under the reasonable consumer test, which

11   requires a plaintiff to show "members of the public are likely to be deceived" by a

12   defendant's activity.  *Williams*, 552 F.3d at 938 (citation omitted).  The reasonable

13   consumer test requires more than a mere possibility that advertising "might

14   conceivably be misunderstood by some few consumers viewing it in an unreasonable

15   manner."  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v.*

16   *Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)).  Rather, the reasonable

17   consumer test requires a probability "that a significant portion of the general

18   consuming public or of targeted consumers, acting reasonably in the circumstances,

19   could be misled."  *Id.* (citation omitted).  The touchstone under this test is whether the

20   product labeling and ads promoting the product have a meaningful capacity to

21   deceive.  *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023).

22         Courts rarely grant a motion to dismiss for failure to satisfy this test in the initial

23   pleadings "[b]ecause what a reasonable person would believe is generally a question

24   of fact,"  *Rice-Sherman v. Big Heart Pet Brands, Inc.*, No. 19-03613, 2020 WL 1245130,

25   at *9 (N.D. Cal. Mar. 16, 2020), and at this stage, the court's focus is on the plausibility

26   of the legal theories, *Iqbal*, 556 U.S. at 679.  However, "where plaintiffs base deceptive

27   advertising claims on unreasonable or fanciful interpretations of labels or other

28   advertising, dismissal on the pleadings may well be justified."  *Moore v. Trader Joe's*

1    *Co.*, 4 F.4th 874, 882–83 (9th Cir. 2021) (quoting *Bell v. Publix Super Markets, Inc.*, 982

2    F.3d 468, 477 (7th Cir. 2020)).  Taking Plaintiffs' allegations as true and drawing all

3    reasonable inferences in their favor, as the Court must at this stage, the Court finds

4    Plaintiffs have satisfied the reasonable consumer test.

5            *First*, Plaintiffs allege that Defendants concealed the true price of their products

6    because they never disclosed the Service Fee in any signage, advertising, or

7    marketing materials, including their menu, official website, and App.  (FAC ¶¶ 27, 37–

8    40, 71, 94.)  Defendants argue they adequately disclosed the Service Fee because the

9    checkout screen showed the total amount the customer would be charged for the

10   transaction, including a breakdown of the product's price, taxes, tips, and fees, and

11   the line item titled "Taxes & Fees" on the checkout screen included a "?" icon

12   customers could press to see the Service Fee's percentage and precise amount.  (Mot.

13   Dismiss at 16–17.)

14           The Court finds Crumbl's failure to transparently disclose the Service Fee

15   concerning.  Plaintiffs allege that Crumbl, which operates as a takeout restaurant

16   selling baked goods, does not provide services that would lead reasonable

17   consumers to expect the imposition of the Service Fee.  (FAC ¶¶ 2, 20, 44.)  Thus,

18   absent disclosure of the Service Fee before purchase, Plaintiffs allege consumers

19   could not reasonably be expected to anticipate the inclusion of a fee, supporting the

20   conclusion that "consumers are deceived into thinking their purchase will cost less at

21   the time they order it."  (*Id.* ¶¶ 44–46.)

22           The Court is inclined to agree.  It is unclear what, if any, service customers

23   accessing the App to purchase cookies or beverages would expect to pay for, and

24   Defendants do not contest that Crumbl does not disclose the Service Fee anywhere

25   besides the checkout screen.  By way of contrast, in *Charbonnet v. Omni Hotels &*

26   *Resorts*, No. 20-cv-01777-CAB-DEB, 2020 WL 7385828 (S.D. Cal. Dec. 16, 2020), the

27   court considered whether defendant's pricing disclosures for its hotel rooms were

28   misleading when defendant did not include a $25 property fee in the advertised price.

1   The court dismissed plaintiff's claim and held that reasonable consumers could not be

2   deceived by defendant's representations because defendant explicitly disclosed that

3   the daily rate advertised did not equal the total cost of the room, and that the total

4   price for the room would include taxes and fees, which "put a reasonable consumer

5   on notice that they would be charged some taxes and fees in addition to the daily rate

6   for the total price . . . before they even click [sic] 'Reserve' to take the first step toward

7   booking a room . . . ."  2020 WL 7385828, at *3.

8        Here, on the other hand, Plaintiffs received no notice of the Service Fee before

9   they arrived at the checkout screen and had to press on the "?" icon to discover they

10  were being charged the Service Fee.  Thus, the fee was not clearly disclosed.  *Cf.*

11  *Wayne v. Staples*, 135 Cal. App. 4th 466, 483–84 (2006) (upholding judgment in

12  defendant's favor on plaintiff's claim for deceptive marketing of declared value

13  coverage for parcel shipping because the shipping order form disclosed that

14  defendant would "surcharge the cost of this product as an administrative expense,"

15  and defendant disclosed the price it charged for the coverage prior to any purchase).

16  Therefore, the Court finds Plaintiffs have adequately pled Crumbl's failure to disclose

17  the Service Fee was deceptive.

18       *Second*, Plaintiffs allege Defendants concealed the the Service Fee by bundling

19  it into the "Taxes & Fees" line item because no "reasonable consumer would expect

20  the 'Taxes & Fees' charged by Defendants to include an unlawful Service Fee in

21  addition to lawful state and local sales tax."  (FAC ¶¶ 33, 95.)  Defendants argue this

22  assumption is unreasonable because the line item is labelled "Taxes & Fees," not

23  merely "Taxes," which put Plaintiffs on notice that a fee was being charged.  (Mot.

24  Dismiss at 16.)  Defendants argue that, under the precedent set by *McGinity*, where a

25  label is ambiguous, as opposed to false or misleading, courts must consider what

26  other information was available to the consumer, such as a product's back label, to

27  determine whether a reasonable consumer would be misled.  (Reply Mot. Dismiss

28  (ECF No. 31) at 3–4.)  Here, Defendants argue that the "Fees" portion of "Taxes &

1   Fees" was ambiguous; thus, a reasonable consumer would have investigated the

2   nature of the fees by clicking on the "?" icon to clarify that the fee in question was a

3   Service Fee. (*Id.* at 4–5.)

4       In *McGinty*, the Ninth Circuit dismissed plaintiffs' deceptive advertising claims

5   concerning a label containing the words "Nature Fusion" on the front of a shampoo

6   bottle. 69 F.4th at 1099. The panel held that the label was ambiguous because

7   "[u]nlike a label declaring that a product is '100% natural' or 'all natural,' the front

8   'Nature Fusion' label does not promise that the product is wholly natural . . . [or] make

9   any affirmative promise about what proportion of the ingredients are natural." *Id.* at

10  1098. The court held that, when a product's front label is ambiguous, as opposed to

11  deceptive, a court must consider other information available to the consumer, such as

12  the product's side and back labels, to determine whether a reasonable consumer

13  would be deceived. *Id.* at 1099.

14      *McGinty* clarified prior Ninth Circuit precedent set by *Williams,* in which the

15  court considered whether Gerber's Fruit Juice snacks – which had a front label

16  bearing the words "fruit juice snacks," alongside pictures of fruits – was misleading.

17  *Id.* at 936. The court held that it was misleading because the product did not contain

18  juice from the fruits pictured on the front and the most prominent ingredients listed

19  on the back label were corn syrup and sugar, as opposed to real fruit juice. *Id.* The

20  court explained that the purpose of the ingredient list on a back label is to confirm

21  representations made on the front, not to allow contradictory statements to be made

22  on the front while using the back label to correct such falsities. *Id.* at 939–40. The

23  *McGinity* court endorsed *Williams* but distinguished it on the ground that in *McGinity*,

24  the back label served to confirm what might be confusing on the front, while in

25  *Williams* the additional information was contradictory to the statements made on the

26  front label. 69 F.4th at 1095–99.

27      Accordingly, the rule in the Ninth Circuit appears to be as follows: where the

28  label of a product is ambiguous, meaning a reasonable consumer would realize the

14

1   label could have more than one meaning, the court should consider other information

2   available to the consumer such as information on the back label of the product,

3   common consumer knowledge, and price to determine if a reasonable consumer

4   would be misled. *See McGinity*, 69 F.4th at 1095–99; *see also Trader Joe's Co.*, 4 F.4th

5   at 883. On the other hand, where the front of the product creates more than mere

6   ambiguity, but instead misleads a consumer into thinking one thing that, in fact, is not

7   true, the consumer is not required to dig through other information to dispel that

8   falsity. *Williams*, 552 F.3d at 939–40.

9        Under this standard, the Court finds a reasonable consumer could be misled by

10   the "Taxes & Fees" line item here.  As discussed above, Crumbl did not clearly

11   disclose that it would be charging consumers a Service Fee, so consumers had no

12   reason to expect that the fee in "Taxes & Fees" referred to a non-government-

13   imposed fee.  Therefore, consumers may have been unaware of the ambiguous nature

14   of the "Fees" because they reasonably believed the "bundled 'Taxes & Fees' [they]

15   paid in addition to the retail price were the local and/or state sales taxes assessed on

16   any sale of goods."  (FAC ¶¶ 52, 62.)  By bundling fees with taxes, Crumbl chose to

17   encourage, or at least not dispel, Plaintiffs' misapprehension.  In addition, the small

18   amount of the Service Fee made it unlikely that a reasonable consumer would notice

19   the addition of the fee and be compelled to investigate further.  Therefore,

20   Defendants cannot now argue that Plaintiffs' belief was entirely unreasonable.  Given

21   that the "Taxes & Fees" line item was not clearly ambiguous, the Court need not

22   consider the clarification offered by the "?" icon in its analysis.

23        Crumbl argued vigorously at the hearing that no reasonable consumer would

24   believe that the "Fees" could be government-imposed fees in this context, contrasting

25   this matter to cases involving hotel bookings in which there often are government-

26   imposed fees.  Defendants' argument may ultimately prove correct.  However, at this

27   early stage, the Court cannot say with certainty that a reasonable consumer would not

28   be misled because they would understand that "Fees" here would not include

1  government-imposed fees.  Defendants are free to revisit this argument following

2  discovery.

3      In sum, the Court concludes that Plaintiffs have adequately pled a reasonable

4  consumer could be misled by Defendants' inclusion of the Service Fee under the

5  heading of "Taxes & Fees."  *See Hall v. Marriott Int'l*, No. 19-CV-1715-JLS-AHG, 2020

6  WL 4727069, at *9 (S.D. Cal. Aug. 14, 2020) (declining to dismiss plaintiff's claim that

7  defendant misleadingly lumped a resort fee into the category of "Taxes and Fees,"

8  thereby suggesting the fee was government-imposed, because the court could not

9  conclude "as a matter of law that no reasonable consumer would be misled").

10      *Third*, Plaintiffs allege that the label Service Fee is misleading because Crumbl

11  did not explain the nature of the fee being charged, did not identify what service the

12  fee was tied to, and allegedly used the fee to cover the costs of its operations.  (FAC

13  ¶¶ 26–28, 36, 43–46.)  Defendants argue that Crumbl has no obligation to disclose or

14  explain what the profit generated by the Service Fee was used for.  (Mot. Dismiss at

15  18.)  Defendants point to *Searle v. Wyndham International, Inc.*, 102 Cal. App. 4th

16  1327 (2002), wherein the court considered claims that a hotel's practice of adding a

17  17% service charge to all room service orders which was used to pay servers, in

18  conjunction with giving the guest a bill that included a blank line for a tip, was a

19  deceptive practice that induced patrons to pay gratuities they would not otherwise

20  feel obligated to provide.  *Id.* at 1334.  The court held that the practice was not

21  deceptive because the hotel had "no obligation to advise consumers about what it

22  does with the revenue it receives from them," and the hotel's decision to compensate

23  its room service servers by way of the 17% service charge in no way interfered with the

24  patron's reasonable expectations with respect to tipping.  *Id.* at 1335.

25      The Court agrees that the label Service Fee is not necessarily misleading.  While

26  the label is somewhat ambiguous, as it is unclear what services the fee pays for,

27  Crumbl is not required to disclose those details consumers.  As Defendants argue,

28  Crumbl has not made any representations regarding the nature of the Service Fee that

can be construed as misrepresentations.  (Reply Mot. Dismiss at 8.)  This distinguishes this case from *Ehret v. Uber Technologies, Inc.*, 68 F. Supp. 1121 (N.D. Cal. 2014), in which the court held that a fee charged to ride share passengers was misleading because the fee was represented as a "gratuity" that was "automatically added for the driver" when in reality a significant portion of the fee was retained by defendant as profit.  *Id.* at 1137.  Here, as discussed above, Defendants have been largely silent about the fee, failing to disclose the fee on their App and website, or in any signage or advertising materials.  Thus, they have not made misrepresentations about the nature of the fee.

Accordingly, the Court finds the label Service Fee is not misleading.  However, given Defendants' failure to disclose the fee, as well as their concealment of fee, the Court holds that Plaintiffs have satisfied the reasonable consumer test.

### B.   Applicability of Statutory Provisions

Having concluded a reasonable consumer would be misled by the failure to disclose and concealment of the Service Fee, the Court turns to application of the specific statutory provisions at issue in this case.  The CLRA prohibits a host of "unfair methods of competition and unfair or deceptive acts or practices" involved in "the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  Of note here, the CLRA prohibits "[a]dvertising goods or services with intent not to sell them as advertised."  *Id.* § 1770(a)(9).  The CLRA also prohibits:

> Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays, and media advertising, in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product.

////

////

17

1    *Id.* § 1770(a)(20).  Plaintiffs argue Defendants' advertising of their products' prices

2    violates both these provisions.  Defendants argue, however, that these provisions are

3    plainly inapplicable to Plaintiffs' claims.

4         *First*, Defendants argue section 1770(a)(20) is inapplicable because the Service

5    Fee is not an addition to the price of the "product" as the statute prohibits but is rather

6    a separate charge for a service.  (Mot. Dismiss at 20.)  Defendants also argue that the

7    section is only applicable to advertising, which under *Holt v. Noble House Hotels &*

8    *Resort, Ltd*, 370 F. Supp. 3d 1158 (S.D. Cal. 2019), does not include restaurant menus.

9    (Mot. Dismiss at 20.)  Thus, Defendants argue that Crumbl's menu pricing, which does

10   not include the Service Fee, is not a violation of the CLRA.  (*Id.*)

11        The Court finds that section 1770(a)(20) is applicable.  Plaintiffs have alleged

12   that the Service Fee is not a true service charge but is rather a surcharge intended to

13   surreptitiously increase the price of Crumbl's products by 2.95%.  (*See* FAC ¶¶ 43–46.)

14   Taking Plaintiffs' allegations as true, the Court finds that Plaintiffs have sufficiently

15   alleged the Service Fee is an addition to the price of Crumbl cookies and beverages.

16   Further, the Court finds that Plaintiffs are challenging the prices listed in the App and

17   on Crumbl's official website.  Unlike restaurant menus, which "are not public

18   announcements which are published or disseminated to the general public in an effort

19   to arouse a desire to buy or patronize," *Holt*, 370 F. Supp. 3d at 1166, the App and

20   website are widely viewed by consumers and are the primary way Crumbl announces

21   its weekly rotating menu of specialty flavors to the public, a strategy designed to draw

22   in consumers and encourage frequent purchases.  (*See* FAC ¶¶ 2, 21, 23.)  Thus,

23   Plaintiffs have sufficiently alleged a claim against Crumbl's advertising practices.

24        *Second,* Defendants argue section 1770(a)(9) is inapplicable because Crumbl

25   intends to sell its "goods" and separate "services" exactly as advertised, with prices

26   listed for each food and drink item, and the price of the separate service determined

27   by a fixed percentage of the customer's total order.  (Mot. Dismiss at 21.)  However, as

28   the Court indicated above, Plaintiffs have sufficiently alleged Crumbl advertises one

18

1  price for its products while also surreptitiously charging a higher price by adding the

2  Service Fee.  Thus, Plaintiffs have sufficiently alleged Crumbl advertises their goods

3  with the intent not to sell them as advertised.

4  In sum, the Court will not dismiss Plaintiffs' CLRA claim for damages.

## IV.  Plaintiffs' Fraudulent Misrepresentation Claim

6  Under California law, to succeed on a claim for fraudulent misrepresentation, a

7  plaintiff must show: "(1) misrepresentation; (2) knowledge of falsity; (3) intent to

8  defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage."

9  *UMG Recording, Inc. v. Bertelsmann AG*, 479 F.3d 1078, 1096 (9th Cir. 2007).  Fraud-

10  based claims are subject to Rule 9(b)'s heightened pleading standard.  *See* Fed. R.

11  Civ. P. 9(b).  "In alleging fraud or mistake, a party must state with particularity the

12  circumstances constituting fraud or mistake."  *Id.*  However, "[m]alice, intent,

13  knowledge, and other conditions of a person's mind may be alleged generally."  *Id.*

14  Plaintiffs allege Defendants fraudulently represented that they charged the

15  posted retail price for their products while actually charging a uniformly higher price

16  due to the Service Fee.  (FAC ¶¶ 134–40.)  Defendants argue that this claim must be

17  dismissed because Plaintiffs have failed to adequately plead misrepresentation,

18  knowledge of falsity, intent, or reliance.  (Mot. Dismiss at 23–26.)

19  The Court finds that Plaintiffs have sufficiently alleged misrepresentation.

20  Plaintiffs allege that the Service Fee is a hidden surcharge on Crumbl's products.

21  (FAC ¶¶ 26, 28, 43–46.)  Accordingly, Plaintiffs allege Defendants fraudulently

22  represented to consumers that they would be charged one price for Crumbl's

23  products while uniformly charging them a higher price.  (*Id.* ¶ 43.)  As part of this

24  misrepresentation, Plaintiffs also allege that Crumbl failed to disclose the Service Fee

25  on any signage, advertising materials, etc., before consumers reached the checkout

26  screen, and concealed the Service Fee by bundling it into the "Taxes & Fees" line item

27  at checkout where consumers would need to click the "?" icon to discover the

28  existence of the Service Fee (as opposed to other possible fees) and amount of the

1  fee.[6] (*Id.* ¶¶ 27–28, 30–40.)  The Court finds, based on these allegations, that Plaintiffs

2  have sufficiently alleged an affirmative misrepresentation.

3       The Court also finds that the scienter requirement is met because Plaintiffs

4  allege that Crumbl, as designer and operator of the App, had knowledge that a

5  Service Fee was imposed on all purchases (FAC ¶¶ 29, 41, 42), and knew that this

6  meant each product was charged at a higher rate than its advertised menu prices (*id.*

7  ¶ 69).  The intent requirement is also met because Plaintiffs allege that Defendants hid

8  the Service Fee in order to convince consumers that the price of the product had not

9  changed and induce them to buy the products at the lower price while still increasing

10  Crumbl's revenues.  (*Id.* ¶ 46.)

11       Finally, the Court also finds Plaintiffs have adequately pled justifiable reliance.

12  A plaintiff suing for fraudulent misrepresentation must show both (1) actual reliance,

13  i.e., the matter was material in the sense that a reasonable person would find it

14  important in determining how he or she would act; and (2) reasonable reliance, i.e., it

15  was reasonable for the plaintiff to have relied on the misrepresentation.  *Hoffman v.*

16  *162 North Wolfe LLC*, 228 Cal. App. 4th 1178, 1194 (2014).

17       *Actual reliance*.  A plaintiff suing for fraudulent misrepresentation "must

18  demonstrate actual reliance on the allegedly deceptive or misleading statements" and

19  "that the misrepresentation was an immediate cause of the injury-producing conduct."

20  *In re Tobacco II Cases*, 46 Cal. 4th 298, 306, 326 (2009); *see also Mirkin v. Wasserman*,

21  5 Cal. 4th 1082, 1097 (1993) (actual reliance on a misrepresentation is an element of a

22  common law cause of action for fraud or misrepresentation).

23            Actual reliance occurs when a misrepresentation is an
24            immediate cause of [a plaintiff's] conduct, which alters his
            legal relations, and when, absent such representation, he
25

26  ─────────────────────────
   [6] Defendants argue that Plaintiffs must allege a duty to disclose in order to claim to fraudulent
   misrepresentation based on either concealment or nondisclosure.  (Mot. Dismiss at 24.)  However, as
27  Plaintiffs correctly point out, "[w]hile a claim for fraudulent concealment requires a duty to disclose, a
   claim for affirmative misrepresentation does not."  *Immobiliare, LLC v. Westcor Land Title Ins. Co.*, 424 F.
   Supp. 3d 882, 889–90 (E.D. Cal. 2019).  As Plaintiffs allege an affirmative misrepresentation, they need
28  not allege a duty to disclose.

1
2
3
4
5

> would not, in all reasonable probability, have entered into
> the contract or other transaction.  It is not . . . necessary that
> [a plaintiff's] reliance upon the truth of the fraudulent
> misrepresentation be the sole or even the predominant or
> decisive factor in influencing his conduct . . . .  It is enough
> that the representation has played a substantial part, and so
> has been a substantial factor, in influencing his decision.

6

7

*Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 976–77 (1997) (quotations and citations omitted).

8

9

10

11

12

13

14

A presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material.  *Id.* at 977.  A misrepresentation is judged to be material if a reasonable person would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.  *Id.* Materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.  *Id.*

15

16

17

18

19

20

21

22

23

Here, the alleged misrepresentation was that Crumbl's products were priced as shown on Crumbl's menu, while in actuality Crumbl tacked on a 2.95% surcharge. Defendants argue that Plaintiffs have not pled materiality because a purchaser of a gourmet cookie would be unlikely to find an extra 2.95% fee important in determining whether to purchase the cookie.  (Mot. Dismiss at 25–26.)  The Court cannot say, at this early stage, whether such a price differential would be material to a purchaser or not. Plaintiffs allege that they "purchased Crumbl's products in reliance on the menu's pricing as set out on the Crumbl App."  (FAC ¶¶ 55, 65.)  Plaintiffs have sufficiently pled actual reliance.

24

25

26

27

28

*Reasonable Reliance.*  Besides actual reliance, a plaintiff must also show reasonable reliance, i.e., circumstances were such to make it reasonable for the plaintiff to accept the defendant's statements without an independent inquiry or investigation.  *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 864 (2007).  The reasonableness of the plaintiff's reliance is

1   judged by the plaintiff's knowledge and experience and is typically a question of fact.
2   *Id.* at 864–65.

3       Plaintiffs have alleged that, prior to making their purchases, they reviewed the
4   menu and other information displayed in the App but did not see any disclosure of
5   the Service Fee.  (FAC ¶¶ 50, 60.)  Further, Plaintiffs allege they reviewed their order in
6   the App before making their purchase but did not see the Service Fee.  (*Id.* ¶¶ 51, 61.)
7   Finally, in making their purchases, Plaintiffs alleged they "reasonably believed the
8   bundled 'Taxes & Fees' [they] paid in addition to the retail price were the local and/or
9   state sales taxes assessed on any sale of goods."  (*Id.* ¶¶ 52, 62.)  Taking these
10  allegations as true, the Court finds that Plaintiffs have adequately pled they
11  reasonable relied on the prices listed in Crumbl's menu when making their purchases.

12      Accordingly, the Court finds that Plaintiffs have adequately alleged their
13  fraudulent misrepresentation claim and will deny dismissal as to this claim.

14  **V.    Claims on Behalf of a Nationwide Class**

15      Plaintiffs seek to bring their fraudulent misrepresentation and unjust
16  enrichment/quasi-contract claims on behalf of a Nationwide Class.  (FAC ¶¶ 133–48.)
17  Plaintiffs do not specify which state's laws apply to these two common law claims.  *Id.*
18  Defendants argue that Plaintiffs cannot pursue these claims on behalf of class
19  members nationwide, however, because Defendants are Utah limited liabilities
20  companies and California law "cannot apply where the claims of absent class
21  members and the defendant have no connection to the state." (Mot. Dismiss at 27.)
22  Additionally, Defendants argue Plaintiffs lack standing to assert these claims under the
23  laws of other states.  (*Id.* at 28–29.)

24      The Court concludes that dismissing Plaintiffs' nationwide class claims at this
25  stage would be premature.  Although Defendants may ultimately prove correct in
26  their argument that California law cannot be applied to out-of-state purchases made
27  by out-of-state consumers, whether this is so depends, in substantial part, on a case-
28  specific choice-of-law analysis that the Parties and the Court have yet to undertake.

1   *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589–94 (9th Cir. 2012), *overruled*

2   *on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,

3   31 F.4th 651 (9th Cir. 2022) (whether out-of-state class members must pursue claims

4   under their own states' consumer protection statutes and unjust enrichment laws

5   instead of California's depends on a multi-stage choice-of-law analysis specific to the

6   "facts and circumstances" of the particular case); *see also Figy v. Lifeway Foods, Inc.*,

7   No. 13-cv-04828-THE, 2016 WL 4364225, at *6–7 (N.D. Cal. Aug. 16, 2016) (declining

8   to strike nationwide class allegations at the pleading stage in light of parties' failure to

9   conduct choice-of-law analysis); *Werdebaugh v. Blue Diamond Growers*, No. 12–CV–

10  02724–LHK, 2013 WL 5487236, at *16 (N.D. Cal. Oct. 2, 2013) (same).  Accordingly,

11  the Court will reserve judgment on this issue for the class certification stage.

12          The Court will also reserve judgment as to whether Plaintiffs have standing to

13  assert claims under the laws of other states.  District courts in this circuit are split on

14  "whether a named plaintiff in a putative class action has standing to assert claims

15  under the laws of states where the named plaintiff does not reside or was injured."

16  *Sultanis v. Champion Petfoods United States Inc.*, No. 21-cv-00162-EMC, 2021 WL

17  3373934, at *5 (N.D. Cal. Aug. 3, 2021).  "On the one hand, most courts have held that

18  plaintiffs can only bring claims on behalf of other consumers in states where they

19  'were injured or had any pertinent connection.'"  *Id.* (collecting cases).  "A growing

20  minority of courts in this circuit have held, conversely, that whether a named plaintiff

21  can represent class members whose claims arise under the laws of different states is

22  not a standing question that needs to be decided at the motion to dismiss stage."  *Id.*

23  (collecting cases).  Ultimately, the decision to address this issue on a motion to dismiss

24  or defer until a motion for class certification "is left to the district court's discretion."

25  *Effinger v. Ancient Organics LLC*, No. 22-cv-03596-RS, 2023 WL 2214168, at *6 (N.D.

26  Cal. Feb. 24, 2023); *see also McKinney v. Corsair Gaming, Inc.*, No. 22-cv-00312-CRB,

27  2022 WL 2820097, at *12 (N.D. Cal. July 19, 2022) (collecting cases).  Given that it is

28  unclear what law the Court must apply, the Court finds that the question of whether

Plaintiffs can bring claims under the laws of non-California states is better suited for a motion for class certification.

Accordingly, the Court will not dismiss the nationwide claims at this juncture.

**CONCLUSION**

In accordance with the above, it is hereby ORDERED that Defendants' Motion to Dismiss (ECF No. 24) is GRANTED in part and DENIED in part as follows:

1. Plaintiffs' first cause of action under the CLRA is DISMISSED to the extent it seeks equitable remedies, with leave to amend;

2. Plaintiffs' second cause of action under the FAL is DISMISSED in its entirety with leave to amend;

3. Plaintiffs' third cause of action under the UCL is DISMISSED in its entirety with leave to amend;

4. Plaintiffs' fifth cause of action for unjust enrichment/quasi-contract is DISMISSED in its entirety with leave to amend;

5. The Court declines to dismiss Plaintiffs' first cause of action under the CLRA to the extent it seeks damages;

6. The Court declines to dismiss Plaintiffs' fourth cause of action for fraudulent misrepresentation; and

7. Plaintiffs are granted thirty (30) days to file an amended complaint.

IT IS SO ORDERED.

Dated:  __**June 7, 2024**__

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC4 – Watson23-cv-1770.MTD

24