Erin J. Ruben
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN LLP**
900 W. Morgan St.
Raleigh, NC 27603
(919) 600-5009 (phone)
865-522-0049 (fax)
eruben@milberg.com

*Attorneys for Plaintiffs and Putative Classes*
*Other Counsel on Signature Page*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA WATSON and ANGELA KEERS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CRUMBL LLC, CRUMBL IP, LLC, CRUMBL FRANCHISING, LLC, and CRUMBL ENTERPRISES, LLC ,<br><br>Defendants. | Case No.: 2:23-cv-01770-DJC-CKD<br><br>Hon. Daniel J. Calabretta<br><br>**STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND RELATED MATTERS** |

Plaintiffs Lisa Watson and Angela Keers (collectively, "Plaintiffs") and Defendants Crumbl LLC, Crumbl IP, LLC, Crumbl Franchising, LLC, and Crumbl Enterprises, LLC (collectively, "Defendants") (together, the "parties"), by and through their undersigned counsel, hereby stipulate and agree to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter.

1

**A.     General Principles**

1. All parties are under an obligation to take reasonable steps to comply with this Stipulation and [Proposed] Order Regarding the Discovery of ESI and Related Matters ("Order"). The parties are aware of the importance the Court places on cooperation and have agreed to cooperate in good faith in facilitating discovery in this matter.

2. The procedures and protocols set forth in this Order shall govern the production format of hard-copy documents and ESI in this action, to the extent available, reasonably accessible, and proportional to the needs of this action all as contemplated by the Federal Rules of Civil Procedure, see Fed. R. Civ. P. 26(b)(1). By stipulating to this Order, the parties do not waive any objections, privileges, or arguments against the production or disclosure of documents, ESI, and other information.

3. The parties will attempt to resolve, in person, in writing (including email), or by telephone, disputes regarding the issues set forth herein before filing a motion with the Court, or otherwise seeking relief. If the parties are unable to resolve the dispute after a good-faith effort, the parties may seek Court intervention in accordance with the Court's procedures.

**B.     ESI Discovery Procedures**

1. <u>On-site inspection of electronic media.</u> Such an inspection will not be allowed, absent a demonstration by the requesting party of specific need and good cause, or, as allowed by agreement of the parties.

   a. <u>Search methodology.</u> Prior to any production the parties agree to meet and confer to discuss: (i) the identity and role of custodians from which documents will be obtained for the production; (ii) the identity, scope and format of custodial and non-custodial sources from which documents will be considered for production; and (iii) search terms.

2

STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND RELATED MATTERS
CASE NO. 2:23-CV-01770-DJC-CKD

    b. <u>Technology Assisted Review ("TAR")</u>.  The parties acknowledge the potential benefits of using TAR technology and methodology in assisting in the identification of responsive documents, whether used in combination with search terms or otherwise. The parties shall negotiate and discuss the proper procedures to use in this matter, including TAR, to identify a proportionate and reasonable number of potentially responsive documents in connection with the parties' productions.

2. <u>Format.</u>

    a. <u>General ESI Production Format</u>.  All responsive ESI and hardcopy documents, except that ESI which is produced in native format pursuant to Section 3(f), shall be produced as black and white, single-page, 300 DPI, Group IV TIFF files or in other reasonably viewable format. To the extent practicable, TIFF files should be assigned a unique name matching the Bates number of the corresponding image. To the extent practicable, Bates numbers and confidentiality designations should be electronically branded on each produced TIFF image. These TIFF images should be provided in folders limited to 1,000 files per folder. Where images are provided as single page TIFF images, a cross reference file (such as an OPT image load file) will be provided to delineate images by document.   Documents shall be processed to reveal track changes, comments, and hidden content in Word documents and speaker notes and hidden content in presentation files.

    b. <u>Physical Documents Production Format</u>.  In scanning hardcopy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically grouped). If documents were scanned

3

STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND RELATED MATTERS
CASE NO. 2:23-CV-01770-DJC-CKD

before this case, however, and are not logically grouped, they may be produced in the format in which they were maintained. In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately. The parties will make reasonable efforts to group the documents correctly and to correct any grouping failures.

c. <u>Color</u>.  Documents containing color may, but need not, be produced in single-page color JPEG format. If an original document contains color necessary to understand the meaning or content of the document, the producing party shall product a color image and/or native file of the document. Content produced from any website or mobile application shall always be produced in a color image/or native file. Reasonable requests for color productions shall be honored.

d. <u>Extracted Text</u>.  To the extent reasonably possible, extracted text shall be produced from documents that are not redacted.  The extracted text shall be in separate document-level UTF-8 TXT files provided in a separate folder.  The number of TXT files per folder should be limited to 1,000 files.

e. <u>Native Production</u>.  Unless otherwise agreed to by the parties, the following four file types that are not easily converted to image format will be produced in native format unless they require redaction: (i) spreadsheet-type files (*e.g.* Microsoft Excel, Corel Quattro, *etc.*); (ii) presentation (*e.g.* Microsoft PowerPoint) and drawing files; (iii)  audio/visual/multimedia; and (iv) database files (*e.g.* Microsoft Access).

f. <u>Bates Numbering</u>.  Each document image file will be named with a unique number (Bates Number). When a text-searchable image file is produced,

the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history. Any Bates numbering should be consistent across the production, contain no special characters, and be numerically sequential within a given document. If a Bates number or set of Bates numbers is skipped, the skipped number, or set of numbers, should be noted with a placeholder. Any attachments to documents assigned Bates numbers shall be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.

g. <u>Unitization</u>.  If a document is more than one page, the unitization of the document and any attachments and/or affixed notes will be maintained as they existed in the original document. The producing party will produce full families (parent documents and any attachments) for any non-privileged document(s) that hits on one or more of the applicable search terms, regardless of whether the document that hits on the search term(s) is the parent document or an attachment to the parent document.

h. <u>Parent-Child Relationships</u>. The parties agree that if any part of an email or its attachments is responsive, the entire email and attachments will be produced, except that attachments may be withheld or redacted on the basis of privilege (including attorney/client, work product doctrine, or any recognized privilege) and/or non-responsiveness, and the relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document shall be preserved. The child document should be consecutively produced immediately after the parent document. Each document shall be produced with the production number for the first and last page of that document in the "BEGDOC" and "ENDDOC" fields of the

5

STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND RELATED MATTERS
CASE NO. 2:23-CV-01770-DJC-CKD

data load file and with the "BEGATTACH" and "ENDATTACH" fields listing the production number for the first and last page in the document family. If an attachment is withheld on the basis of privilege and/or non-responsiveness, the producing party will produce a placeholder (a single-page TIFF slip sheet) indicating that the attachment was withheld on the basis of attorney/client, work product doctrine, or any recognized privilege, and/or non-responsiveness.  Attachments will include files sent via hyperlinks to the extent that they (a) are in the possession, custody or control of the producing party, and (b) can reliably, reasonably, and proportionately be identified and produced.

i. <u>Date and Time Fields</u>.  The Date and Time shall be produced in two separate fields – Format: "12/24/2015" and "11:59 PM".

j. <u>Time Zone</u>:  When processing ESI, Coordinated Universal Time (UTC) shall be selected as the time zone.

k. <u>Production Media</u>. The preferred means of producing documents is via secure FTP or secure file share. However, due to large file size or other considerations, documents may also be produced via hard drive. Physical media should be password-protected before it is produced and delivered by separate means to the intended recipient.

l. <u>Replacement Productions</u>. Any replacement production will be transmitted with a cover letter or email to identify the production as a replacement and cross-reference the BegBates and EndBates of the documents being replaced. If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production."

m. <u>Track Changes, Comments, and Similar Data</u>. To the extent that a document or ESI contains tracked changes or comments, the document or

        ESI should be imaged showing tracked changes and comments, except where redacted for privilege. The tracked changes and comments shall also be produced in the accompanying text file. Presentation files, if processed to TIFF format for purposes of applying redactions, shall be produced showing hidden slides and speakers' notes, or if they contain non-privileged comments, may be produced in Native Format. Except in the case of a redaction, the hidden slides and speakers' notes shall also be produced in the accompanying text file.

    n. <u>Password-Protected or Encrypted Files</u>. With respect to any ESI items that are password-protected or encrypted, the Producing Party will take reasonable and proportionate steps under the circumstances to break the protection or identify the password, if reasonably possible, so that the document can be reviewed and/or produced.

    o. <u>System Files</u>. Each Party will "de-NIST" system and application files, unless they are determined by the producing party to be responsive.

3.     <u>De-duplication.</u> The parties may de-duplicate their ESI production globally across custodial and non-custodial data sources. Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level). The initial custodian of a document and any subsequent custodians of deduplicated copies of the document should be listed in the "Custodians" field, with each custodian name separated by a semicolon. The parties also agree to track the file paths for the duplicate files and save and provide that file path data.

5.     <u>Email Threading.</u> Each party, at its discretion, may use industry standard best practices and analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. With respect to an e-mail chain, the parties are permitted to produce

the longest unique or most inclusive chain from lesser emails and the parties do not need to separately produce the lesser-included e-mails unless those lesser-included e-mails either (a) include unique attachments not included in the longest chain, or (b) contain a BCC recipient not shown in the longest unique chain. If a lesser-included e-mail includes a unique attachment, then the lesser-included e-mail must be separately produced with the attachment.  A most inclusive email thread is one that contains all of the prior or lesser-inclusive emails, including attachments, for that branch of the email thread.  Upon reasonable request, the producing party will produce a less inclusive copy.

6. <u>Metadata fields.</u> The parties agree that the metadata fields listed in **Schedule A** will be produced to the extent they are reasonably accessible and non-privileged.

7. <u>Databases, Structured, Aggregated, or Application Data</u>.  If a database or other structured or aggregated data source contains responsive data, the parties shall meet and confer to address the most appropriate and cost-effective means for (a) the identification of responsive data fields, and (b) the production format, which may include running a report or a database export.  The parties will reasonably cooperate in the exchange of information concerning such databases to facilitate discussions on identification and production format.  Further, the parties will meet and confer regarding appropriate steps to be taken to protect the PII of any individuals which will be subject to production within the database.

8. <u>Text Messages, Mobile Application Data and Collaboration Software Programs (Teams/Slack)</u>.  If applicable sources exist in the possession, custody or control of a party, the parties will meet and confer to discuss the search parameters and format of production of these data types. The parties recognize that there is a wide variety of capabilities available, and it is difficult to assert a standard into a protocol without information as to each party's capabilities.

8

STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND RELATED MATTERS
CASE NO. 2:23-CV-01770-DJC-CKD

9. <u>Go Gets or Other Identifiable ESI or Documents</u>.  Nothing in Section C relieves a party of its obligations under the Federal Rules of Civil Procedure to search for and produce information and documents responsive to a discovery request propounded under those Rules, subject to valid objections pursuant to applicable law.

**D.    Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Rule 37(e) of the Federal Rule of Civil Procedure, to take reasonable and proportional steps to preserve discoverable information in the parties' possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties will not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties will preserve all discoverable ESI in their possession, custody, or control.

2. The parties will supplement their disclosures in accordance with Rule 26(e) of the Federal Rules of Civil Procedure with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is identified after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).  For clarity, the parties will not be required to log privileged or work product documents created after the filing of the complaint in this matter. Nothing in this Section relieves a party of its obligations under the Federal Rules of Civil Procedure to search for and produce information and documents responsive to a discovery request propounded under those Rules, subject to valid objections pursuant to applicable law.

3. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved or collected:

   a. Deleted, slack, fragmented, or other data only accessible by forensics.

    b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

    c. Online access data such as temporary internet files, history, cache, cookies, and the like.

    d. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

    e. Back-up data that are duplicative of data that are more accessible elsewhere.

    f. Server, system, or network logs.

    g. Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**E. Privilege**

1. Documents or information that are withheld from production, in whole or in part, on the basis of privilege must be disclosed on a privilege log in compliance with the requirements of Federal Rule of Civil Procedure 26(b)(5). The parties shall meet and confer in a good faith effort to reach agreement on the manner in which a privilege log will be generated and the contents of such a log, including: (a) other materials not required to be logged (in addition to those set forth in paragraph E.2); (b) requirements around the logging of email threads; (c) what metadata fields will be used to create the log; and (d) timing of the service of the logs after productions are made.

2. The parties are not required to log (a) privileged or work-product information generated after the filing of the complaint or (b) documents and records that have been redacted to remove PII.

10

STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND RELATED MATTERS
CASE NO. 2:23-CV-01770-DJC-CKD

3. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

4. Pursuant to Fed. R. Evid. 502(d), the production of any documents in this matter will not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege or protection applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.  Information produced in discovery that is known or suspected to be protected as privileged or work product should be immediately returned to the producing party, and its production will not constitute a waiver of such protection.

5. The production of any documents in this action will not constitute a waiver of any arguments by the producing party challenging the future admissibility or use of those documents in this matter.

6. Nothing contained in this Order is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

7. In addition to the terms in this Section, the parties will comply with the terms of the Stipulated Confidentiality and Protective Order.

**F. Redactions**

A producing party may use redactions to protect any material that is legally privileged or is non-public personal information that the Producing Party contends does not need to be disclosed.[1] Any redactions shall be clearly indicated, including the grounds

---

[1] As used herein, "non-public personal information" ("NPPI") includes individuals' birthdates, Social Security numbers, taxpayer identification numbers, driver's license numbers, credit card numbers, financial account numbers, other financial information, and the names and addresses of minors.

for the redaction. Alternatively, a redaction log may be produced that identifies the document redacted and the grounds for the redaction. A Producing Party may not partially redact a document on the basis of relevance.

    1.    <u>Spreadsheets</u>.  Spreadsheets shall be redacted in native format using eDiscovery industry best practices.

    2.    <u>Presentations</u>.  Native presentations that require redactions shall be produced as TIFF images, which shall include speaker notes and "hidden" slides as extracted by the software used to process the documents. Color presentations requiring redactions shall be converted to color images, and black and white presentations requiring redactions shall be converted to black and white TIFF images, provided that proper grayscale printing is enabled to ensure that any dark colored text is not hidden by dark objects/drawings around the text. If the presentation contains video or audio components, the video or audio will be produced as native files with the appropriate attachment relationships.

**G. Third-Party ESI**

A party that issues a non-party subpoena shall include a copy of this Order with the subpoena and state that the parties to the litigation have requested that third parties produce documents in accordance with the specifications set forth herein. The party that issues a non-party subpoena is responsible for timely producing any documents obtained under a subpoena to all other parties.

**H. Amendment of Order**

Nothing herein shall preclude any party from seeking to amend this Order in writing for good cause shown, provided, however, that no party may seek relief from the Court

12

STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND RELATED MATTERS
CASE NO. 2:23-CV-01770-DJC-CKD

concerning compliance with this Order until it has met and conferred in good faith with any parties involved in the dispute.

I. Miscellaneous

Nothing herein constitutes an admission by any party that any particular category of discovery is appropriate in this matter or that there exists producible ESI.

IT IS SO ORDERED.

Dated: September 25, 2024

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

4, wats1770.23

Submitted for Entry:

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLP**

/s/ Erin Ruben
Erin Ruben*
900 W. Morgan St.
Raleigh, NC 27603
T: 865-247-0080
F: 865-522-0049
eruben@milberg.com

Harper T. Segui**
825 Lowcountry Blvd., Suite 101
Mount Pleasant, SC 29464
T: 919-600-5000

**Foley & Lardner LLP**

/s/ Jaikaran Singh
Jaikaran Singh, CA BAR NO. 201355
jsingh@foley.com
11988 El Camino Real, Suite 400
San Diego, CA 92130
T: 858-847-6700
F: 858-792-6773

Jordan Bledsoe (Pro Hac Vice)
jordan.bledsoe@foley.com
Robert Stewart, CA BAR NO. 330308
rtstewart@foley.com

| | | |
|---|---|---|
| 1 | hsegui@milberg.com | 95 S. State Street, Suite 2500<br>Salt Lake City, UT 84111 |
| 2 | Rachel Soffin* | T: 801.401.8900 |
| 3 | 800 S. Gay Street, Suite 1100<br>Knoxville, TN 37929 | F: 385-799-7576 |
| 4 | T: 865-247-0080<br>F: 865-522-0049 | Savannah Levin, CA BAR NO. 347929<br>slevin@foley.com |
| 5 | rsoffin@milberg.com | 555 South Flower Street, Suite 3300<br>Los Angeles, CA 90071 |
| 6 | | T: 213-972-4500<br>F: 213-486-0065 |
| 7 | *Admitted *pro hac vice*<br>**Motion to be admitted *pro hac vice* forthcoming | |

STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND RELATED MATTERS
CASE NO. 2:23-CV-01770-DJC-CKD

# SCHEDULE A

| Production Field Name | Relativity Field Name | Field Description |
|---|---|---|
| BEGDOC | ProdBegBates | Beginning Bates number assigned to each document |
| ENDDOC | ProdEndBates | Ending Bates number assigned to each document |
| BEGATTACH | ProdBegAtt | Beginning Bates number assigned to the group of documents to which the parent document and any attachment documents are associated |
| ENDATTACH | ProdEndAtt | Ending Bates number assigned to the group of documents to which the parent document and any attachment documents are associated |
| CUSTODIANS | Dupe Custodian | The custodian, (or multiple custodians for globally de-duped documents) of a document |
| CONFIDENTIALITY | Production Branding | Confidential designation |
| RECORDTYPE | RecordType | The type of record (e.g., email, attachment, physical) |
| EMAILSUBJECT | EmailSubject | The subject line of a produced email |
| DOCAUTHOR | DocAuthor | The "From" line of a produced email or the Author of a document |
| TO | To | The "To" line of a produced email |
| CC | CC | The "CC" line of a produced email |
| BCC | BCC | The "BCC" line of a produced email |
| PARENTDATE | ParentDate | The date on which a document family's parent was sent, created, or modified. |
| PARENTTIME | ParentTime | The time at which a document family's parent was sent, created, or modified. E.g. "22:08:23" |
| DATESENT | Sent Date | The date on which an email message was sent. E.g.: "12/24/2015" |
| DATERECEIVED | Received Date | The date on which an email message was received. |
| DATECREATED | Created Date | The date on which a file was created. |
| DATELASTMODIFIED | Last Modified Date | The date on which changes to a file were last saved. |
| IMPORTANCE | Importance | Notation created for email messages to note a higher level of importance than other email messages added by the email originator. |
| FILENAME | FileName | The filename of a produced document |
| NATIVEFILE | Prod NativeLink | The location of the produced native version of a document |
| TEXTFILE | Prod TextLink | The location of the extracted text/OCR text for a document |
| FOLDER | Source Path | File path/folder structure for the original native files as it existed at the time of collection |
| ALLFOLDER | DeDuped Paths | File path/folder structure for the duplicate files as they existed at the time of collection |
| FILEEXTENSION | File Extension | Extension of original file |

| FILEHASH | Hash | MD5 or SHA-1 Hash Value of document |
|---|---|---|
| PRODVOLUME | Production Volume | Volume number of production |
| SUSPECTOLE | Contains Embedded Files | The yes/no indicator of whether a file such as a Microsoft Word document has additional files embedded in it. |
| COMMENTS | Comments | Comments extracted from the metadata of the native file |
| HASTRACKCHANGES | Track Changes | The yes/no indicator of whether the track changes metadata on an Office document is set to True. |
| HIDDENTEXT | Has Hidden Data | Indication of the existence of hidden document data such as hidden text in a Word document, hidden columns, rows, or worksheets in Excel, or slide notes in PowerPoint. |
| FILESIZE | File Size | Generally a decimal number indicating the size in bytes of a file. |
| PAGECOUNT | | Page count of produced images |
| ATTACHMENTCOUNT | Number of Attachments | Number of Attachments |
| REDACTED | Redacted | Yes or No |
| EMAILSUBJECT | Subject | The subject of the email message. |
| DOCUMENTTITLE | Document Title | The title of a non-email document. |
| DATESTARTED | Meeting Start Date | The date on which a meeting item in Outlook |
| CONVERSATION | Conversation | Normalized subject of email messages. This is the subject line of the email after removing the RE and FW that are added by the system when emails are forwarded or replied to. |
| CONVERSATIONINDEX | Conversation Index | Email thread created by the email system. This is a maximum 44-character string of numbers and letters that is created in the initial email and has 10 characters added for each reply or forward of an email. |

STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND RELATED MATTERS
CASE NO. 2:23-CV-01770-DJC-CKD